IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

---

No. 93-2186

---

JOSEPH M. SCHULTEA, SR.,

Plaintiff-Appellee,

versus

DAVID ROBERT WOOD, ET AL.,

Defendants,

DAVID ROBERT WOOD, HOMER FORD,
W.F. "SLIM" PLAGENS and
WARREN K. DRIVER,

Defendants-Appellants.

---

Appeal from the United States District Court
for the Southern District of Texas

---

(March 9, 1995)

Before POLITZ, Chief Judge, WISDOM, KING, GARWOOD, JOLLY,
HIGGINBOTHAM, DAVIS, JONES, SMITH, DUHÉ, WIENER, BARKSDALE, GARZA,
Emilio M., DeMOSS, BENAVIDES, STEWART, and PARKER, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

I.

A former chief of police for Tomball, Texas, alleges that three city councilmen and the city manager conspired to demote him after he reported to state authorities that one of the councilmen might be involved in illegal activity.

As chief of police, Joseph M. Schultea began investigating allegations in March 1992 that David R. Wood, a councilman, was involved in criminal activity. On April 8, 1992, Schultea told

Warren K. Driver, the city manager of this home rule city, about his investigation. The next day, Schultea and Driver discussed the investigation with Mario Del Osso, the city's attorney. The three decided that Schultea would forward his investigative report to the Texas Department of Public Safety.

The next day, Wood demanded that Driver add to the upcoming council agenda possible action against Schultea. Driver, however, persuaded Wood not to pursue the matter.

With the next report about Wood to the TDPS, events took a different turn. After consulting with Driver, Schultea sent additional information about Wood to the TDPS on May 27, 1992. Later that same day, Schultea learned that Wood and the two other councilmen, Homer Ford and W.F. "Slim" Plagens, had instructed Driver to add to the agenda of the June 1, 1992 city council meeting, discussion of adverse action against Schultea. Schultea alleges that Driver told him that "he had no option but to place me on the agenda because Councilmen Wood, Ford and Plagens have all told him that either I go or he goes." Schultea requested that the city council consider the agenda item in public, but the city council made its decision in a closed executive session. The next day, Driver told Schultea that he had been demoted from police chief to assistant police chief.

Schultea immediately requested an administrative appeal or grievance hearing to challenge his demotion and to stop city councilmen Wood, Ford, and Plagens from making "libelous and slanderous comments" about him. On June 9, 1992, Driver told

2

Schultea that the city did not have a grievance or administrative appeal procedure for his case. Schultea nevertheless again asked the city council for a hearing. Driver responded with a memorandum that, Schultea alleges, led people to believe that he deserved his demotion. Driver eventually put Schultea on the June 15, 1992, city council agenda at which Schultea could again request a hearing to contest his demotion and to clear his name. The record is not clear but the city council appears to have tacitly denied his request for a hearing at the June 15 meeting.

Schultea then filed this suit. He alleges that by demoting him, the council members deprived him of his property and liberty interests without due process and violated his First Amendment rights by retaliating against him for reporting Wood's allegedly criminal activities to the state. Schultea also claims several violations of Texas state law.

The councilmen moved to dismiss. The district court denied the motion, stating simply that "the complaint . . . states a claim against the defendants." The four individual defendants brought this interlocutory appeal challenging the denial of their qualified immunity from suit.

A panel of this court affirmed in part, reversed in part, and remanded for further proceedings. 27 F.3d 1112 (5th Cir. 1994). It agreed with the district court that Schultea's First Amendment claim should have survived the motion to dismiss, because "[n]o reasonable public official in 1992 [i.e., the year the alleged retaliation occurred] could have assumed that he could retaliate

3

against an employee because the employee disclosed instances of misconduct by a public official."  Id. at 1120.

The panel disagreed with the district court's conclusion that Schultea's procedural due process claims, at least in their present form, should go forward.  The first of Schultea's two procedural due process claims alleges a constitutionally protected property interest in his employment.  In Texas, employment is terminable at will absent a contract to the contrary; Schultea had to allege such a contract.  The panel found that neither the city charter nor the representations of the official who hired Schultea created such a contract.  Id. at 1116-17.

Schultea's second procedural due process claim alleges that his demotion, combined with the city councilmen's stigmatizing slander, deprived him of his liberty interest.  The panel held that to establish a deprivation of this liberty interest, Schultea had to show more than demotion.  Id. at 1117.  Schultea retained city employment without a reduction in salary or fringe benefits.  The panel concluded that this negated his liberty interest claim.  Id. at 1117-18.

The panel reversed the order denying the motion to dismiss these due process claims, but remanded to permit Schultea to amend and restate them.  The court noted that the complaint did not state Schultea's "best case."  Id. at 1118.  Schultea had filed his complaint himself, and had only later retained counsel.  Id. at 1118 n.9.

4

The panel gave guidance for the remand in footnote 2. 27 F.3d at 1115 n.2. In that note, the panel held that this circuit's pleading standard survives the recent Supreme Court decision in Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 113 S. Ct. 1160 (1993). The panel reasoned that the Leatherman court did not "'consider whether [its] qualified immunity jurisprudence would require a heightened pleading in cases involving individual government officials.'" Schultea, 27 F.3d at 1115 n.2 (quoting Leatherman, 113 S. Ct. at 1162). The panel observed and we agree that nothing in Leatherman disturbed our holding in Elliott v. Perez, 751 F.2d 1472 (5th Cir. 1985), that complaints in such cases be pled with "factual detail and particularity." 751 F.2d at 1473.

Our task today is to explain the measure by which to judge the adequacy of any amended complaint Schultea may file on remand. It is the occasion for our revisit of Elliott. As we will explain, we stand by our insistence that complaints plead more than conclusions, and that a plaintiff can, at the pleading stage, be required to engage the affirmative defense of qualified immunity when invoked. However, we will no longer insist that plaintiff fully anticipate the defense in his complaint at the risk of dismissal under Rule 12.

It is important to follow the shifts in application of Elliott as qualified immunity has evolved. Our statement of the measure, "heightened pleading," has not changed, but in application it has moved, linked as it is to the substantive principle. This is the

5

age-old dance of procedure and substance, here with the music of qualified immunity.

We are persuaded that we can balance plaintiffs' rights to challenge lawless government action against public officials' rights to be free of the difficulties of the discovery process without judicial additions to Rule 9(b) and with no change in the day-to-day procedure in these cases, except one. We will draw to center stage a judicial tool explicitly preserved by the Civil Rules, the reply. See Fed. R. Civ. P. 7(a).

## II.

In Elliott, we held that in suits filed under 42 U.S.C. § 1983 against public officials in their private capacity, a claim must be stated with particularity. Judge Brown, writing for the panel majority, forthrightly insisted on this greater detail to accommodate the substantive right of officials sued for money damages to be free both of individual liability and the discovery process -- at least where a defendant's actions, although illegal at the time of suit, were not certainly so when the complained of actions were taken. 751 F.2d at 1477-78 & n.13. The panel saw qualified immunity as a substantive right overriding liberal pleading rules, often termed notice pleading, the conventional but misleading description of the Civil Rules. Id. at 1479. A concurring opinion doubted judicial authority to impose a pleading rule. Id. at 1483 (Higginbotham, J., concurring specially). It urged that insistence on greater pleading detail ought to rest on

the reality that what is short and plain is inseparable from the legal and factual complexity of the case at issue. <u>Id.</u> It reasoned that federal trial judges could insist that to state a claim, short and plain, against a public official, a plaintiff must at least chart a factual path to the defeat of the defendant's immunity, free of conclusion. <u>See</u> <u>id.</u>

The majority in <u>Elliott</u> and the cases that followed treated pleading questions as a choice between polar opposites -- notice pleading and pleading with particularity.[1] In many if not most cases, however, our insistence on pleading with particularity translated to no more than an insistence that the complaint not plead conclusions. To be sure, we have invoked "heightened pleading" and "pleading with particularity" as a pleading requirement in kinship with Rule 9(b) -- but again our "particularity" seldom bit harder in application than an insistence that a plaintiff plead more than conclusions.[2] Had we simply

---

[1] <u>See</u>, <u>e.g.</u>, <u>Colle v. Brazos County</u>, 981 F.2d 237, 243 (5th Cir. 1993); <u>Jacquez v. Procunier</u>, 801 F.2d 789, 791 (5th Cir. 1986); <u>Morrison v. City of Baton Rouge</u>, 761 F.2d 242, 244-45 (5th Cir. 1985); <u>but see</u> <u>O'Quinn v. Manuel</u>, 773 F.2d 605, 608 (5th Cir. 1985).

[2] <u>See</u>, <u>e.g.</u>, <u>Grady v. El Paso Community College</u>, 979 F.2d 1111, 1114 (5th Cir. 1992); <u>Jackson v. City of Beaumont Police Dep't</u>, 958 F.2d 616, 621 (5th Cir. 1992); <u>Vinson v. Heckmann</u>, 940 F.2d 114, 116 (5th Cir. 1991); <u>Streetman v. Jordan</u>, 918 F.2d 555, 557 (5th Cir. 1990); <u>Stem v. Ahearn</u>, 908 F.2d 1, 6 (5th Cir. 1990), <u>cert. denied</u>, 498 U.S. 1069 (1991); <u>Fee v. Herndon</u>, 900 F.2d 804, 807 (5th Cir.), <u>cert. denied</u>, 498 U.S. 908 (1990); <u>Rodriguez v. Avita</u>, 871 F.2d 552, 554 (5th Cir.), <u>cert. denied</u>, 493 U.S. 854 (1989); <u>Sisk v. Levings</u>, 868 F.2d 159, 161 (5th Cir. 1989); <u>Geter v. Fortenberry</u>, 849 F.2d 1550, 1553 (5th Cir. 1988); <u>Lewis v. Woods</u>, 848 F.2d 649, 652 (5th Cir. 1988); <u>Boulos v. Wilson</u>, 834 F.2d 504, 509 (5th Cir. 1987); <u>Martin v. Dallas County</u>, 822 F.2d 553, 556 (5th Cir. 1987); <u>Darlak v. Bobear</u>, 814 F.2d 1055, 1065

insisted that plaintiffs plead more than conclusions in their complaints, our holdings in these post-Elliott cases would not have changed.

The pleading hurdle erected was, in actual fact, somewhere between the poles of this perceived bi-polar set. Significantly, the requirement of making a short and plain statement demands more than a statement of conclusions even without the support of Rule 9(b). This is because the Federal Rules of Civil Procedure have, since their inception in 1938, insisted on more than conclusions, and in this sense, have never been a system of notice pleading.

Because the Supreme Court has further defined the contours of qualified immunity since Elliott, we first consider that doctrine. We must define the demands qualified immunity now makes upon the Civil Rules and, in particular, the Rules' preference for discovery over pleading, before we return to pleading standards. We will then describe the array of procedural tools available to a trial judge.

III.

Three years before Elliott, in Harlow v. Fitzgerald, 457 U.S. 800 (1982), the Court redefined qualified immunity for government officials. Justice Powell's opinion for the Court explained that henceforth, qualified immunity would extend to governmental

_____

(5th Cir. 1987); Palmer v. City of San Antonio, 810 F.2d 514, 516 (5th Cir. 1987); Brown v. Texas A & M Univ., 804 F.2d 327, 333 (5th Cir. 1986; Brinkmann v. Johnston, 793 F.2d 111, 113 (5th Cir. 1986); Hale v. Harney, 786 F.2d 688, 690 (5th Cir. 1986).

officials performing discretionary functions "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." 457 U.S. at 818. The Court rejected the subjective, good faith element of the qualified immunity defense that it had adopted seven years before in Wood v. Strickland, 420 U.S. 308, 321 (1975). The Court's deletion of the subjective element of good faith rested on the pragmatic judgment that it "frequently has proved incompatible with our admonition in Butz [v. Economou, 438 U.S. 478 (1978),] that insubstantial claims should not proceed to trial." Harlow, 457 U.S. at 815-16. The cost of the subjective inquiry included its attendant increased difficulty in resolving claims against officials without resort to the discovery process.

Two years before Harlow, the Court had juggled the twin task of recognizing an immunity from the discovery process and allowing exploration of its subjective element. See Gomez v. Toledo, 446 U.S. 635 (1980). The circuits had been divided over the placement of the burden of pleading a defense of good faith. The First Circuit had required the plaintiff to plead as part of his claim for relief that the defendant was motivated by bad faith. See, e.g., Gaffney v. Silk, 488 F.2d 1248, 1251 (1st Cir. 1973). All other circuits considering the issue had placed the burden on the defendant. See Gomez, 446 U.S. at 638 n.5 (collecting cases). The Court concluded that "[s]ince qualified immunity is a defense, the burden of pleading it rests with the defendant." Id. at 640. The Court held that it saw "no basis for imposing . . . an obligation

9

to anticipate such a defense" in the complaint.  Id.  The Court observed that the facts of good faith and the facts underlying immunity "depend[] on facts peculiarly within the knowledge and control of the defendant."  Id.  It stressed heavily the subjective element of the immunity defense.  It was not completely clear that Gomez, which rested so heavily upon the qualified immunity defense's subjective element, survived Harlow's deletion of the subjective component.  This was essentially the law of qualified immunity when Elliott was decided.

Within two years of Elliott, the Supreme Court returned in Anderson v. Creighton, 483 U.S. 635 (1987), to the practical difficulties of qualified immunity, including the difficulty of determining the availability of the defense without defeating its vital protection from the burdens of discovery.  Justice Scalia's opinion for the Court turned to the element of "clearly established law."  He explained that objective legal reasonableness would be empty of meaning if the level of generality with which the law was described were not particularized to the question of whether it was clear "that a reasonable official would understand that what he is doing violates that right."  Id. at 640.  Justice Scalia stressed that the inquiry was fact-specific.  The Court "emphasized that qualified immunity questions should be resolved at the earliest possible stage of a litigation," but acknowledged that discovery may be necessary.  Id. at 646 n.6.  He conceded that in some cases, such as in search cases, probable cause and exigent circumstances will often turn on facts peculiarly within the knowledge of the

10

defendants.  And if there are conflicts in the allegations regarding the actions taken by the police officers, discovery may be necessary.  Even then, the discovery "should be tailored specifically to the question of [defendants'] qualified immunity."  Id.  Implicit in Justice Scalia's analysis is an insistence that a plaintiff cannot be allowed to rest on general characterizations, but must speak to the factual particulars of the alleged actions, at least when those facts are known to the plaintiff and are not peculiarly within the knowledge of defendants.

The difficulties of qualified immunity in application surfaced again four years later in Siegert v. Gilley, 111 S. Ct. 1789 (1991).  Chief Justice Rehnquist, writing for the Court, explained that the Court had taken the case "to clarify the analytical structure under which a claim of qualified immunity should be addressed."  Id. at 1793.  Reaffirming Gomez, the Court noted that qualified immunity is a defense to be pleaded by a defendant official.[3]  When a defendant pleads the defense of qualified immunity, the trial judge should determine both what the current applicable law is and whether it was clearly established when the action occurred.  Id.  Significantly, the Court instructed that until this threshold question was answered, no discovery should be had.  The Court did not reach the legitimacy of the court of appeals's use of a "heightened pleading standard."  Justice Kennedy's concurring opinion did do so, observing that

---

[3] Siegert's reference to Gomez may, and properly so, now have more significance for us than it ultimately will for the Court that made it.

> [t]he heightened pleading standard is a departure from the usual pleading requirements of Federal Rules of Civil Procedure 8 and 9(b), and departs also from the normal standard for summary judgment under Rule 56. But avoidance of disruptive discovery is one of the very purposes for the official immunity doctrine, and it is no answer to say that the plaintiff has not yet had the opportunity to engage in discovery. The substantive defense of immunity controls.

Id. at 1795 (Kennedy, J., concurring).

Finally, we return to where we began. In 1993, the Court in Leatherman concluded that the heightened pleading requirement of Elliott could not be applied in a § 1983 suit against a municipality, reserving the question of whether it might survive in cases against public officials. We need not answer that question today because henceforth we do not rely upon Rule 9's particularity requirements for the simple reason that it is unnecessary to do so. A practical working marriage of pleading and qualified immunity is achievable without looking to Rule 9. We look instead to Rule 7.

IV.

Qualified immunity's limits upon access to the discovery process create a new and large role for the Rule 7(a) reply, a vestige of pre-1938 common law and code pleading expressly preserved in the Civil Rules. At the heart of the 1938 transition to the Civil Rules was the over-arching policy judgment that pleadings would henceforth play a far less important role in the winnowing process. This reduced role for pleadings in general came with the implicit direction to use the discovery processes to put flesh on claims and defenses.

12

In the 1938 transition, the reply was preserved but put on the shelf, seldom to be used. Both common law and code pleading required a response to any new matter in an initial responsive pleading at the pain of admitting the assertion. Under Rule 7(a), it is not necessary to reply to such new matter, and under Rule 8(d), allegations in a pleading for which no response is required are deemed denied. See 5 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1186, at 24 (citing Charles E. Clark, Handbook of the Law of Code Pleading § 108 (2nd ed. 1947)).

Thus the Civil Rules anticipate a reduced, but not eradicated, role for the Rule 7 reply. Professors Wright and Miller observe that "[i]n certain instances, an additional pleading by the plaintiff may be helpful to the defendant in laying the groundwork for a motion to test the sufficiency of the claim." 5 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1185, at 23. We believe that ordering a reply to the affirmative defense of qualified immunity is one of those certain instances.

When a public official pleads the affirmative defense of qualified immunity in his answer, the district court may, on the official's motion or on its own, require the plaintiff to reply to that defense in detail. By definition, the reply must be tailored to the assertion of qualified immunity and fairly engage its allegations. A defendant has an incentive to plead his defense with some particularity because it has the practical effect of requiring particularity in the reply.

The Federal Rules of Civil Procedure permit the use of Rule 7 in this manner. The only Civil Rule that governs the content of Rule 7 replies is Rule 8(e)(1), which demands that "[e]ach averment of a pleading shall be simple, concise, and direct."

We do not read Rule 8(e)(1) as a relevant limitation upon the content of a Rule 7 reply. Indeed, a party pleading fraud or mistake with particularity under Rule 9(b) is also required to do so in a simple, concise and direct manner. Nor is Rule 8(a)(2)'s "short and plain" standard a limitation on the content of a Rule 7 reply. Rule 8 applies only to the subset of pleadings that "set[] forth a claim for relief, whether an original claim, counterclaim, cross-claim, or third-party claim." Rule 8(a) does not encompass pleadings that it does not list, including Rule 7 replies. Employing the maxim that the Supreme Court used in Leatherman -- expressio unius est exclusio alterius -- we hold that because Rule 8(a) does not list Rule 7 replies, Rule 8(a)'s "short and plain" standard does not govern Rule 7 replies.

There is a powerful argument that the substantive right of qualified immunity supplants the Federal Rules's scheme of pleading by short and plain statement. Yet, the issue is complex and difficult. The contention that a federal procedural rule conflicts with a substantive right is problematic. "[A]ll federal rules of court enjoy presumptive validity. Indeed, to date the Supreme Court 'has never squarely held a provision of the civil rules to be invalid on its face or as applied.'" Exxon Corp. v. Burglin, 42 F.3d 948 (5th Cir. 1995) (citation omitted) (quoting Paul M. Bator

14

et al., Hart & Wechsler's The Federal Courts and the Federal System 769 (3d ed. 1988)). In any event, finding a civil rule inapplicable does not solve the problem. We would have to supply a new rule in its place. Nor will it do to insist that avoiding qualified immunity is an element of a claim. As Siegert made plain, Gomez is alive and well.

V.

Our answer to Leatherman is that the district court has an array of procedures that will carry the load as far as pleadings can. First, the district court must insist that a plaintiff suing a public official under § 1983 file a short and plain statement of his complaint, a statement that rests on more than conclusions alone. Second, the court may, in its discretion, insist that a plaintiff file a reply tailored to an answer pleading the defense of qualified immunity. Vindicating the immunity doctrine will ordinarily require such a reply, and a district court's discretion not to do so is narrow indeed when greater detail might assist. The district court may ban discovery at this threshold pleading stage and may limit any necessary discovery to the defense of qualified immunity. The district court need not allow any discovery unless it finds that plaintiff has supported his claim with sufficient precision and factual specificity to raise a genuine issue as to the illegality of defendant's conduct at the time of the alleged acts. Even if such limited discovery is allowed, at its end, the court can again determine whether the case

15

can proceed and consider any motions for summary judgment under Rule 56.

None of this draws upon the authority of Rule 9(b). The ultimate outcome of a confrontation between Rule 9(b) and qualified immunity, we no longer need to decide and we do not. We do not abandon the insistence in Elliott v. Perez that a complaint must do more than allege conclusions. Rather, we embrace it, retaining the practical core of the writing of both Judge Brown and the concurring opinion.

Our answer to the question of whether Elliott survived Leatherman is this: Since our first efforts in Elliott nine years ago, the law of qualified immunity has developed, and our perception of its practical demands upon the Civil Rules has moved in tandem. The confrontation we saw in 1984 is not the confrontation today, and we can insist upon all the particularity of practical use, with no draw upon Rule 9(b).

Finally, we do not today change the procedures developed under Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985). The power of the district court to satisfy itself that an action filed in forma pauperis is not frivolous or malicious is granted by 28 U.S.C. § 1915(d). See Watson v. Ault, 525 F.2d 886, 892 (5th Cir. 1976). A district court need not await any responsive pleading to conduct its inquiry. As Justice Marshall put it: "[T]he statute [§ 1915(d)] accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual

16

allegations and dismiss those claims whose factual contentions are clearly baseless. Examples of the former class are claims against which it is clear that the defendants are immune from suit. . . ." Neitzke v. Williams, 490 U.S. 319, 327 (1989).

We affirm the district court's denial of the motion to dismiss Schultea's first amendment claim, but reverse its denial of the motion to dismiss Schultea's claims of denied procedural due process. These claims are remanded to allow plaintiff to amend and for further proceedings consistent with this opinion.

AFFIRMED IN PART AND REVERSED IN PART.

EDITH H. JONES, Circuit Judge, with whom, JOLLY and BARKSDALE, Circuit Judges, join, specially concurring:

Our court considered this case en banc purportedly to answer whether Leatherman v. Tarrant County Narcotics Intelligence & Coordination, 113 S. Ct. 1160 (1993), demanded we jettison the "heightened pleading" standard in qualified immunity cases. While I do not disagree with Judge Higginbotham's novel and interesting use of Rule 7 to address the qualified immunity defense, I do not believe Leatherman compels our court to abandon its consistent approach over the last decade. I write briefly in defense of the continued vitality of Elliott v. Perez, and of its uniform adoption among the courts of appeals.[4]

---

[4] The other courts of appeals have uniformly embraced a heightened pleading standard in qualified immunity cases. See, e.g. Hunter v. District of Columbia, 943 F.2d 69, 76 (D.C. Cir. 1991); Oladeinde v. City of Birmingham, 963 F.2d 1481, 1485 (11th Cir. 1992), cert. denied, 113 S.Ct 1586 (1993); Sawyer v. County of Creek, 908 F.2d 663, 667 (10th Cir. 1990); Branch v. Tunnell, 937 F.2d 1382, 1386-87 (9th Cir. 1991); Brown v. Frey, 889 F.2d 159, 170 (8th Cir. 1989),

Notably, Judge Higginbotham's opinion for this en banc court does not assert that Leatherman demands a retreat from Elliott. Nor could it. Despite a superficial relevance, Leatherman cannot faithfully be read to preclude - or even indict - the application of a heightened pleading requirement in actions against individual government officials. First, the Chief Justice writing for a unanimous Court explicitly distinguished "heightened pleading" in § 1983 actions against "municipalities" from "state or local officials sued in their individual capacity." Id. at 1162. ("We thus have no occasion to consider whether our qualified immunity jurisprudence would require a heightened pleading in cases involving individual government officials.")

Moreover, the Chief Justice's mode of analysis confirms that the Supreme Court did not cast doubt on the propriety of Elliot v. Perez as applied to claims against government officials. The respondent in Leatherman attempted to salvage the Fifth Circuit's heightened pleading requirement in municipal liability cases by forging a bond between suits against municipalities and those against government officers. Specifically, respondent asserted "municipalities are no different from state or local officials sued in their individual capacity." Id. Notably, the Chief Justice declined to dismiss the kinship as immaterial, but instead answered, "This argument wrongly equates freedom from

cert. denied, 493 U.S. 1088 (1990); Elliot V. Thomas, 937 F.2d 338, 344-45 (7th Cir. 1991), cert. denied, 112 S.Ct 973 (1992); Chapman v. City of Detroit, 808 F.2d 459, 465 (6th Cir. 1986); Dunbar Corp. v, Lindsey, 905 F.2d 754, 763 (4th Cir. 1990); Krohn v. United States, 742 F.2d 24, 31-32 (1st Cir. 1984).

18

liability with immunity from suit." Id. Such a response (and extensive discussion of the difference) would have been completely unnecessary if the Chief Justice's Rule 9 text-based argument were applicable to claims against individual government officers.

Furthermore, the opinion in Leatherman more naturally implies that the Supreme Court might require the imposition of a heightened pleading standard in these cases - let alone permit one to be applied: "We thus have no occasion to consider whether our qualified immunity jurisprudence would require a heightened pleading in cases involving individual government officials." Id. (emphasis added). Judge Luttig writing for the Fourth Circuit read the case in this manner. Jordan By Jordan v. Jackson, 15 F.3d 333, 339 n.5 (4th Cir. 1994). In fact, no circuit has concluded that Leatherman undermines the vitality of heightened pleading in qualified immunity cases. Branch v. Tunnell, 14 F.3d 449, 456-57 (9th Cir.), cert. denied, 114 S.Ct. 2704 (1994) (Branch II); Kimberlin v. Quinlan, 6 F.3d 789, 794 n.9 (D.C. Cir. 1993), cert. granted, ____ S. Ct. ____ (1995); Jordan By Jordan v. Jackson, 15 F.3d 333, 339 (4th Cir. 1994).

Instead of relying on inferences from Leatherman, the majority opinion summons Gomez v. Toledo, 446 U.S. 635 (1980), (from the grave?) to jettison heightened pleading. As an initial matter, it seems unlikely that the panel in Elliott v. Perez, which adopted heightened pleading in 1985, was superseded by the decision of the Supreme Court in 1980. Judge Higginbotham did not cite Gomez in his special concurrence to Elliott. Further, Justice

19

Scalia, Judges Ken Starr and Harry Edwards concluded in 1984 that Harlow required heightened pleading in the plaintiff's complaint. Hobson v. Wilson, 737 F. 2d 1, 29 (D.C. Cir. 1984).[5]  Of course, Judge Higginbotham avoids such anomalies by asserting that Gomez was suspended until Siegert v. Gilley, 111 S. Ct. 1789 (1991).

Such a resurrection is at least inconsistent with Justice Kennedy's concurrence in Siegert, in which he not only accepted the more demanding standard but welcomed it:  "The heightened pleading standard is a necessary and appropriate accommodation . . . in qualified immunity analysis." Id. at 1795 (citing Harlow, 457 U.S. 800 (1982)).  He left no room for doubt:

> The heightened pleading standard is a departure from the usual pleading requirements of Fed. R. Civil Proc. 8 and 9(b), and departs also from the normal standard for summary judgment under Rule 56.  But avoidance of disruptive discovery is one of the very purposes for the official immunity doctrine, and it is no answer to say that the plaintiff has not yet had the opportunity to engage in discovery. The substantive defense of immunity controls.
>
> Upon the assertion of a qualified immunity defense the plaintiff must put forward specific, nonconclusory factual allegations which establish malice, or face dismissal.

Id. (Kennedy, J.,concurring).  The majority of the Court intimated no disagreement with Justice Kennedy but dismissed the case on the ground that there was no substantive constitutional violation.  Id. at 1791.  The three justices in dissent, while disagreeing as to

---

[5]     Justice Scalia wrote in 1985 of the propriety of application of heightened pleading to the plaintiff's complaint.  Smith v. Nixon, 807 F.2d 197, 200-01 (D.C.Cir. 1986).

the merits of the constitutional issue, nonetheless also recognized the necessity for some form of heightened pleading in qualified immunity cases. <u>Id</u>. 1797-1801 (Marshall, J. dissenting). Accordingly, four justices endorsed a heightened standard in qualified immunity and none disagreed. Finally, the holding of <u>Siegert</u> is in no way inconsistent with a heightened pleading requirement, the issue on which certiorari was granted. The Court simply took a different path to resolving Siegert's case on the pleadings.

Perhaps Judge Higginbotham does not wholly subscribe to the revival of <u>Gomez</u> à la <u>Siegert</u> either, for he concedes that "<u>Siegert</u>'s reference to <u>Gomez</u> may, and properly so, now have more significance for us than it ultimately will for the Court that made it." My view is somewhat different. I do not think the dicta of <u>Gomez</u>/<u>Siegert</u> requiring a defendant to plead qualified immunity is inconsistent with heightened pleading. And to the extent Judge Higginbotham's implication from <u>Gomez</u>/<u>Siegert</u> is based on <u>dicta</u> rather than a holding of the Court, I am not convinced of our duty to follow <u>dicta</u> slavishly. As Justice Scalia commented, the Court "think it generally undesirable, where holdings of the Court are not at issue, to dissect the sentences of the United States Reports at though they were the United States Code." <u>St. Mary's Honor Center v. Hicks</u>, ____ U.S. ____, 113 S. Ct. 2742, 2751 (1993).

This substantive immunity afforded public officials to free them from the burdens of litigation cannot be abrogated by a rule of civil procedure. Under the Rules Enabling Act, the Federal

21

Rules of Civil Procedure "shall not abridge, enlarge or modify any substantive right."  28 U.S.C. § 2072(b).  Absent a demand for specific, non-conclusory allegations that would defeat immunity, a government official would routinely sacrifice some of his substantive right to avoid the distraction of "the oft-time overwhelming preliminaries of modern litigation."  Elliott v. Perez, 751 F.2d at 1478.  To the extent of any conflict, Rules 8 and 9(b) must yield to vindication of the defense of immunity.

To say this is not, however, to conclude that § 1983 plaintiffs are hopeless in the face of the heightened pleading requirement.  Our court recently reiterated that the apparent harshness of the rule is "tempered by this circuit's directives to allow a plaintiff initially failing to state a claim the opportunity to amend or supplement the pleadings freely, so that he may state his best case." (footnoted citation omitted).  Wicks v. Miss. State Employment Svces, ____ F.3d ____ (5th Cir. 1995) (Politz, C.J.).

As a next-best alternative, Judge Higginbotham's approach appears to have merit, although we can only guess how it will operate in practice.  For the sake of continuity and stability, however, I would not be inclined to abandon heightened pleading until we must, and only at that juncture would I welcome the Rule 7 procedure.


EMILIO M. GARZA, Circuit Judge, specially concurring:

-22-

Although I concur in the judgment of the court, I do so because I agree with Judge Jones that *Elliott*'s heightened pleading standard survives *Leatherman*.  I write separately to express two concerns regarding the majority's reliance on the Rule 7(a) reply.

Until now, we have required that § 1983 plaintiffs meet the qualified immunity defense with allegations in their complaints, allegations that were required, at a minimum, to be more than mere conclusions.  Now, however, "we will no longer insist that a plaintiff fully anticipate the defense in his complaint at the risk of dismissal under Rule 12."  Instead, a plaintiff will be able to wait to see whether the defendant will raise the qualified immunity defense in his answer, and the plaintiff will be required to meet the defense only if the district court orders him to file a reply.  If the district court does order a reply,[6] the plaintiff can meet the qualified immunity defense in the reply, a pleading to which even the majority's "more than conclusions" pleading requirement does not apply.[7]

Because the standards that once governed a plaintiff's allegations regarding qualified immunity will not apply to a

---

[6]     The consequences of the district court's not ordering a reply are unclear.  Presumably, a court could not then dismiss the complaint for failure to meet the qualified immunity defense because we no longer require that the plaintiff fully anticipate the qualified immunity defense in his complaint.

[7]     The majority does not hold, nor could it, that the "more than conclusions" pleading standard will apply to a plaintiff's Rule 7(a) reply.  It grounds the "more than conclusions" standard in Rule 8(a)(2)'s requirement that pleadings contain a "short and plain statement" of the asserted claim, but as the majority accurately notes, Rule 8(a)(2)'s "short and plain statement" requirement would not apply to a Rule 7(a) reply.  The only rule that governs the content of a Rule 7 reply is Rule 8(e)(1), which requires that "[e]ach averment of a pleading shall be simple, concise, and direct."  However, the majority does not "read Rule 8(e)(1) as a relevant limitation upon the content of a Rule 7 reply."

plaintiff's reply, the majority must decide what rules, if any, govern the content of such a reply. The court does not answer this question with an independent legal requirement against which district courts can measure a plaintiff's allegations. Instead, the court explains that the district court *may*:

> require a plaintiff to reply to [the qualified immunity] defense *in detail*.[8] By definition, the reply must be *tailored to the assertion* of qualified immunity and *fairly engage* its allegations. A defendant has an incentive to plead his defense with some particularity because it has the *practical effect of requiring particularity* in the reply.

Slip op. at 13 (emphasis added). Any minimum requirement on the content of the reply will depend on (1) the district court's discretionary decision to require detailed averments in the reply; and (2) the practical effect of the particularity of the defendant's answer. The majority has thus abandoned an independent pleading requirement for a system that depends on the district court's discretion and the litigants' incentives.

The majority's limitation on the district court's discretion to order a reply is also troubling. To the extent the majority limits a district court's discretion to order a reply, its opinion is inconsistent with the plain language of Rule 7(a), which simply states that "the court may order a reply." On one hand, the opinion states that the "court *may, in its discretion*, insist that

---

[8] The Federal Rules of Civil Procedure do not empower the district court to require that a reply be "detailed." Whether "detailed" has independent legal significance or whether the detail required will depend on how district courts formulate their orders requiring a reply is unclear.

-24-

a plaintiff file a reply . . . ." (emphasis added). On the other hand, it states: "Vindicating the immunity doctrine will ordinarily require such a reply, and a district court's discretion to do so is narrow indeed when greater detail might assist." Such a limitation on the district court's discretion is not contained in Rule 7(a), and in my view the majority has not explained why the application of Rule 7(a) to qualified immunity cases requires reading such a limitation into the rule.[9]

The majority's Rule 7 approach, however novel and interesting, raises more questions than it answers. Regardless of these concerns, however, I would hold that *Elliott*'s heightened pleading standard survives *Leatherman* for the reasons stated by Judge Jones in her concurring opinion.

---

[9] The district court's discretion, or lack thereof, also raises the question of how this court, down the road, will review the district court's decision not to order a reply. Rule 7(a) and the court's "may, in its discretion" language suggest an abuse of discretion standard. In contrast, the "if greater detail might assist" limitation seems to involve a question of law, reviewable de novo. How these two aspects combine is unclear. It is also unclear what standard a district court will use to determine when "greater detail might assist."