**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

_____

No. 97-30033
_____

TIMOTHY VANCE,

                              Plaintiff-Appellant,


                    versus


BOARD OF SUPERVISORS OF
SOUTHERN UNIVERSITY, doing
business as Southern University
at New Orleans; ROBERT B. GEX,
Chancellor; MELINDA BARTLEY,
Vice Chancellor; DR. GUILLARNE
LEARY,

                              Defendants-Appellees.

_____

Appeal from the United States District Court
for the Eastern District of Louisiana
(96-CV-2196)
_____

August 7, 1997

Before KING, DUHÉ and WIENER, Circuit Judges.

PER CURIAM:[*]


    Plaintiff-Appellant Timothy Vance, Ph.D, formerly a

probationary tenure track assistant professor at Southern

---

    [*] Pursuant to 5TH CIR. R. 47.5, the Court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

University at New Orleans (SUNO) appeals from the district court's dismissal, pursuant to Federal Rule of Civil Procedure 12(b)(6), of his complaint against Defendants-Appellees implicating purported First Amendment free speech violation in the context of academic freedom. More particularly, Vance's complaint alleged that he was denied promotion and his teaching contract with SUNO was allowed to expire without being renewed in retaliation for his purportedly protected speech arising from an incident involving a former student's failing a final exam in Vance's psychology course, passage of which was a prerequisite to the student's graduating with a Bachelor's degree in psychology. We affirm the district court's dismissal of Vance's action, albeit for reasons different from those given by the district court.

I

In what should have been her last semester before receiving a Bachelors degree from SUNO with a major in psychology, one of Vance's students received a failing grade in a core psychology course required for graduation with such a major. According to Vance's complaint, the student complained to the administration, as a result of which Defendant-Appellee Wanda Bartley, Vice Chancellor for Academic Affairs, is alleged to have entreated Vance to grant the student a passing grade so that she could graduate on schedule. Vance refused, after which the student (like several others similarly situated) was offered an opportunity to re-take the final exam, but she declined to do so. Vance alleged further that when

2

he attended the spring graduation at SUNO he noticed the student in question lining up in academic regalia to participate in the graduating ceremonies; that he went to his office and prepared a written ultimatum, threatening to bring formal charges if that student were permitted to participate in the ceremonies and graduate; that he delivered the ultimatum to Vice Chancellor Bartley; and that as a result the student was not allowed to participate in the ceremony. When subsequently, despite an allegedly unblemished record at SUNO, Vance was denied appointment as acting or interim department head and, later, his teaching contract was not renewed, he filed the instant suit claiming retaliation for his part in the graduation incident. After giving Vance an opportunity to advise it more specifically, pursuant to Schultea v. Woods,[2] the district court dismissed Vance's action for his failure to plea with specificity sufficient to support his otherwise conclusionary allegations of the purported nexus between his putative protected speech and SUNO's unexplained termination of his employment.

## II

It is well settled that on appeal we may affirm the ruling of the district court for reasons that are different from those given by that court. In this case we view as the most appropriate first step in our analysis a determination whether the speech in question

---

[2]47 F.3d 1427 (5th Cir. 1995) (en banc).

is protected, i.e., whether Vance spoke on matters of general public and community concern —— in which case his speech would be entitled to protection under the academic freedom facet of the First Amendment —— or spoke instead solely as an employee principally concerned with issues affecting his employment relationship with his governmental employer.  When we view the facts alleged by Vance in the light most favorable to him and make all reasonable inferences in his favor, we are left with the distinct impression that the particular speech in this case began and ended as employment related communication, never rising to the level of general community concern, and thus is not entitled to constitutional protection.

The speech in question comprised only a few exchanges between Vance and Bartley (and possibly the student in question) over a short period of time.  Essentially, the speech involved a single grade on a single examination (and related work) by a single student in a single class taught and tested by one professor (Vance), and the brief ensuing exchange of correspondence between that sole professor and a sole administrator (Bartley). Specifically, the student failed the final exam and thus could not graduate; Bartley attempted to get Vance to change the grade from failing to passing so that the student could graduate; Vance refused; when Vance spotted the student in the vicinity of the impending graduation exercises, dressed to participate in them, he issued a terse written ultimatum to Bartley either to prevent the

student's participation in graduation or be prepared to defend a formal charge that Vance would bring; Bartley elected to defuse the squabble by having the student removed from the graduation exercises; and, having achieved his narrow goal, Vance dropped the matter and went no further with his "speech."

Admittedly, the incident which had commenced with one professor, one administrator, one student, one course, and one exam could have been the genesis of a large, public outcry fomented and orchestrated by Vance —— not as a principled professor and aspirant to department head concerned with his working conditions and other operational and administrative matters of the university, but as a dedicated educator and member of the community wishing to communicate beyond the four corners of the campus his concerns about the general (mis)handling of academic matters greater than mere employment issue and concerning instead matters of general, community concern. But the employment incident never escalated to a matter of public concern; it ended when Bartley responded to Vance's ultimatum by removing the student from the graduation exercises, pretermitting Vance's speech from ever rising to the level of public comment, much less public concern. As such, it would be of no moment that, if given the judicial opportunity, Vance might have been able to discover and produce sufficient evidence to convince judge or jury that the termination of his teaching employment at SUNO was in direct retaliation for his speech. Firing (or refusing to rehire) a non-tenured, probationary

5

assistant professor for unprotected speech —— or, for that matter, for no reason at all —— is not the kind of incident upon which the relief sought by Vance in this case can be granted. Rather, it is the stuff of which Rule 12(b)(6) dismissals are made.

III

Inasmuch as the speech at issue did not address a matter of public concern and thus was not protected speech, the ruling of the district court in dismissing Vance's action under Rule 12(b)(6) is, in all respects,

AFFIRMED.