# UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

_____

## No. 01-60716
_____

**WANDA LANGFORD, Administrator of the Estate of Michael Langford,**

**Plaintiff-Appellant,**

**versus**

**UNION COUNTY, MISSISSIPPI; JOE BRYANT, In His Individual and Official Capacity as former Sheriff of Union County; TOMMY WILHITE, Sheriff, In His Official Capacity as Successor In Office to Joe Bryant; CARROLL THOMPSON, In His Individual and Official Capacity; MARGARET COUSAR, In Her Official Capacity as Successor to Carroll Thompson; JOHN DOES, #1-5,**

**Defendants-Appellees.**

_____

### Appeal from the United States District Court
### for the Northern District of Mississippi
### (3:00-CV-152-P)
_____

October 18, 2002

Before REAVLEY, BARKSDALE, and CLEMENT, Circuit Judges.

PER CURIAM:[*]

This appeal is from a FED. R. CIV. P. 12(b)(6) dismissal (failure to state a claim). Primarily at issue is whether, at the Rule 12(b)(6) stage and under the requisite "heightened pleading" standard for the qualified immunity defense in this § 1983 action, allegations of an officer's failure to maintain a suicide watch for an involuntarily committed person (awaiting transfer to a mental

---

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

health facility) are sufficient to preclude such immunity. Joe Bryant and Carroll Thompson (individual capacity) were granted qualified immunity against the federal law claims; Union County, Mississippi, was dismissed on the federal law claims (the basis for dismissal is unclear) and was granted absolute immunity against the state law claims. **AFFIRMED IN PART; VACATED IN PART; and REMANDED.**

I.

Wanda Langford *alleged* the following in her complaint and FED. R. CIV. P. 7(a) reply. On 18 March 1999, Michael Langford (Langford) was arrested by the Union County Sheriff's Department for being a threat (with firearm) to himself and his father. While in the Union County jail, Langford attempted to choke himself with a t-shirt, necessitating a trip to the hospital.

The day after Langford's arrest, his father initiated commitment proceedings. As part of that process, Bryant, the Union County Sheriff, arranged for Langford to be transported to a mental health hospital for evaluation. Pursuant to the evaluation, the attending doctors certified that Langford should be committed to a treatment facility.

Langford was not then taken into custody; subsequently, Bryant made several unsuccessful attempts to do so; but Langford fled in fright on each occasion. On 1 April, Bryant finally succeeded in apprehending Langford. That same day, the Union County chancery court ordered him to be involuntarily committed to the state mental

2

hospital because of the substantial threat he posed to himself and others.

*As alleged*:  Bryant ordered Thompson, the jail administrator, to incarcerate Langford; he was placed on suicide watch; Bryant *and/or* Thompson subsequently removed Langford from suicide watch; Langford was provided with a laundry bag; and using the rope from that bag, he hanged himself in his cell.

The complaint against the County, Bryant, Thompson, and others claimed, *inter alia*:  the County failed to implement adequate policies and training regarding the care of persons in its custody while awaiting transfer to a mental health hospital; Bryant was deliberately indifferent to Langford's serious medical needs; and Thompson violated his constitutional duties to Langford.

In their answers and subsequent motions, all defendants claimed immunity.  The magistrate judge stayed discovery except that concerning those motions.  Toward that end, Mrs. Langford noticed the depositions of Bryant, Thompson, and the County. During a conference to settle a dispute over the proposed depositions, and pursuant to Rule 7(a) and **Schultea v. Roth**, 47 F.3d 1427 (5th Cir. 1995)(*en banc*), the magistrate judge ordered Mrs. Langford to file a reply to the qualified immunity defense. Mrs. Langford did not file a Rule 72(a) objection either to having to file the reply or to not being then permitted to take the noticed depositions.

3

After the reply was filed, and pursuant to Rule 12(b)(6), the district court in mid-2001, *inter alia*, not only granted qualified immunity to Bryant and Thompson against the federal claims, but also dismissed the County regarding those claims (it is unclear whether the basis was qualified immunity) and granted it immunity against the state law claims.

## II.

Although other defendants were also sued, the only remaining defendants are Bryant and Thompson (only in their individual capacity against the federal claims) and the County. Mrs. Langford maintains: Bryant and Thompson are not entitled to qualified immunity against the federal claims; the County can never be entitled to qualified immunity against such claims; and, for the state law claims, the County is liable under state law pursuant to *respondeat superior*.

A Rule 12(b)(6) dismissal is reviewed *de novo*. *E.g., Lowery v. Texas A & M Univ. System*, 117 F.3d 242, 246 (5th Cir. 1997). In ruling on such a motion, the court: does not look beyond the pleadings; accepts all well-pleaded facts as true; and views the facts "in the light most favorable to the plaintiff". *Cinel v. Connick*, 15 F.3d 1338, 1341 (5th Cir. 1994), *cert. denied* 513 U.S. 868 (1994). The motion may be granted "only if it appears that no relief could be granted under any set of facts that could be proven

4

consistent with the allegations". *Jackson v. City of Beaumont Police Dep't*, 958 F.2d 616, 618 (5th Cir. 1992).

A.

For the federal law claims, qualified immunity was properly granted for Bryant and Thompson. The district court erred, however, in dismissing those claims against the County.

1.

Concerning Bryant and Thompson's qualified immunity defense against the federal claims, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known". *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Needless to say, qualified immunity is "an *immunity from suit* rather than a mere defense to liability". *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (emphasis in original). Such immunity protects an official not only against standing trial, but also against incurring "the burdens of 'such pretrial matters as discovery'". *McClendon v. City of Columbia*, 2002 WL 2027329 at *4 (5th Cir. 2002) (*en banc*) (quoting *Harlow*, 457 U.S. at 817).

Toward this end, when a public official is sued under § 1983 and claims qualified immunity, the plaintiff must comply with a "heightened pleading" standard. *Schultea*, 47 F.3d at 1433-34.

5

This standard requires more than conclusory assertions. "It requires claims of specific conduct and actions giving rise to a constitutional violation." *Baker v. Putnal*, 75 F.3d 190, 195 (5th Cir. 1996). Of course, for Rule 12(b)(6) purposes, this heightened pleading framework does not alter our acceptance of plaintiff's allegations as true; on the other hand, it does require specific facts and not merely conclusions.

The well-established analysis for qualified immunity is two-pronged: first, pursuant to existing law, plaintiff must assert a violation of a clearly established constitutional right; second, plaintiff must *allege* that defendant's conduct was objectively unreasonable in the light of clearly established law at the time of the incident (because this case is at the Rule 12(b)(6) stage, the *allegations* are tested). *E.g., Behrens v. Pelletier*, 516 U.S. 299, 309 (1996) ("At that earlier stage, it is the defendant's conduct *as alleged in the complaint* that is scrutinized.") (emphasis in original); *Siegert v. Gilley*, 500 U.S. 226, 231 (1991); *Hare v. City of Corinth*, 135 F.3d 320, 325 (5th Cir. 1998).

*Schultea* held that, in order for this heightened pleading standard to be satisfied, a court *may* require the plaintiff to file a Rule 7(a) reply addressing qualified immunity after it has been raised by a defendant. *See also Crawford-El v. Britton*, 523 U.S. 574, 598 (1998)(Rule 7(a) reply appropriate in qualified immunity cases where improper motive is an element). As the magistrate

6

judge noted in ordering the reply, a district court has limited discretion in not ordering one. *Schultea*, 47 F.3d at 1434.

The reply is to be specifically tailored to the qualified immunity defense and must be pleaded with some particularity. *Id.* at 1430-1431. Concomitantly, the district court may preclude discovery until the "plaintiff has supported his claim with sufficient precision and factual specificity to raise a genuine issue as to the illegality of defendant's conduct". *Id.* at 1434.

The district court ruled that the claims against Bryant met the first prong of this test by alleging Bryant's "deliberate indifference" to Langford's safety. *Non-prisoner detainees* look to the Fourteenth Amendment's guarantees of procedural and substantive due process rights with regard to "constitutional essentials" such as safety and medical care. *Jacobs v. West Feliciana Sheriff's Dep't*, 228 F.3d 388, 393 (5th Cir. 2000). The failure to provide these essentials rises to the level of a constitutional violation only when it is a product of deliberate indifference. *Hare v. City of Corinth, Mississippi (Hare II)*, 74 F.3d 633, 643 (5th Cir. 1996)(*en banc)* (In the context of suicide prevention, the law is clearly established that a defendant must not be deliberately indifferent to serious medical needs of detainees.).

Based on *Hare II*, it would appear that "deliberate indifference" is the standard that must be satisfied by Mrs. Langford. She maintains on appeal, however, that, because Langford

7

was involuntarily committed, the officials' conduct must be judged against the lesser "professional judgment" standard provided in *Youngberg v. Romeo*, 457 U.S. 307 (1982). We decline to address this issue because the record does not reflect that it was raised in district court. Nor is there any allegation in plaintiff's complaint and reply that addresses the officials' professional judgment.

A similar failure to preserve an issue in district court is related to plaintiff making no objection to the reply requirement or to the stay of discovery, even though many of the relevant facts are in the possession of Bryant and Thompson. Therefore, we do not address the appropriateness, for this case, of a dismissal prior to limited discovery on the issue of qualified immunity.

As a backdrop to her allegations, Mrs. Langford alleged *in her reply*: "prior to the ... commitment proceedings, ... Langford had a long history of trouble as a result of his mental illness"; and Bryant and Thompson "were well aware of this history". Mrs. Langford alleged that Bryant and Thompson prevented Langford from receiving the protection from self-inflicted harm that he required. She alleged: (1) Bryant was deliberately indifferent to Langford's safety by failing to instruct his employees to maintain a suicide watch; (2) Bryant *and/or* Thompson "apparently" removed Langford from a suicide watch; and (3) Bryant and Thompson issued and/[or] carried out and/or conveyed and/or failed to contradict/prevent the

8

order that resulted in the laundry bag being given to Langford.  In conjunction with this final allegation, Mrs. Langford alleged that providing a rope (part of the bag) amounted to deliberate indifference.

a.

Mrs. Langford alleged *in her complaint* that Bryant was "deliberately indifferent to the safety of ... Langford by failing to instruct his employees to maintain suicide watch".  She did *not* allege that Thompson also failed to do so.

This allegation against Bryant was sufficient to satisfy ***Schultea***'s requirement that plaintiffs state allegations with particularity.  On the other hand, having done so does not necessarily satisfy plaintiff's burden for Rule 12(b)(6) purposes.  The alleged facts must show that the failure to instruct constitutes deliberate indifference.  ***Hare II***, 74 F.3d at 647-648.

Mrs. Langford alleged *in her reply*:  Bryant (and Thompson) knew of Langford's having "choked himself with his t-shirt and [having] to be transported to the hospital" when Langford had been arrested and jailed for being a threat with a firearm ; but, they failed to properly supervise the jail employees when Langford was next held in jail (the occasion of his suicide).  Our court has never held, however, that the failure to instruct employees to maintain a suicide watch, alone, constitutes deliberate indifference.

9

b.

Mrs. Langford also alleged that Bryant *or* Thompson removed Langford from suicide watch. *In her reply*, Mrs. Langford stated: "*Apparently*, at some time thereafter, Joe Bryant *and/or* Carroll Thompson removed [Langford] from suicide watch". (Emphasis added.) First, the allegation allows for the possibility that either Thompson *or* Bryant *might* have removed Langford from suicide watch. Mrs. Langford compounded this generality with the term "apparently". Also, as discussed above, Mrs. Langford alleged *in her complaint* that Bryant merely "fail[ed] to instruct his employees to maintain suicide watch". This contradicts the subsequent allegation that it was Bryant who removed Langford from suicide watch. The sum of these vagaries — "and/or", "apparently" and the contradictory allegations about the failure to instruct — leads to the conclusion that Mrs. Langford failed to plead with sufficient specificity that either Bryant or Thompson was deliberately indifferent by removing Langford from suicide watch.

c.

Mrs. Langford alleged *in her reply* that Langford's "jailers" (not named) were deliberately indifferent to his serious medical needs "[w]hen ... Langford was given a rope with which to hang himself". She alleged that Thompson and Bryant "issued and/[or] carried out and/or conveyed and/or failed to contradict[/prevent] the order which resulted in the laundry bag being given to ...

10

Langford".  In short, Mrs. Langford alleged that the officials may have simply "allowed" the delivery of the bag and did not allege that either Bryant or Thompson was present when it was given to Langford.  This falls far short of specifically alleging facts necessary for deliberate indifference.

In sum, under existing law, plaintiff has failed to satisfy the first prong to defeat qualified immunity:  she has failed to assert a constitutional violation by either Bryant or Thompson. *See, e.g., **Jacobs***, 228 F.3d at 397 ("The fact that [a defendant officer] did not make the decision that [the decedent pretrial detainee] should have a blanket would seem to militate in favor of finding qualified immunity...."); *see also **DeShaney v. Winnebago County Dep't of Social Servs.***, 489 U.S. 189, 198 n.5 (1989) ("mere negligent or inadvertent failure to provide adequate care is not enough"); ***Rhyne v. Henderson County***, 973 F.2d 386, 394 (5th Cir. 1992) (mere negligence not enough to establish a constitutional violation).

The district court ruled that Mrs. Langford satisfied the first prong of the qualified immunity test for Bryant, but not Thompson.  Accordingly, for Bryant, it reached the second prong and found his conduct not objectively unreasonable.  Because, however, Mrs. Langford failed to assert the violation of a constitutional right by Bryant, we need not reach his objective reasonableness *vel non*.

11

2.

Mrs. Langford contends that, in dismissing the federal claims against the County, the district court ruled the County was eligible for qualified immunity; and reasoned that its conduct was negligence at most. Therefore, according to Mrs. Langford's reading of the district court's ruling, it held the County entitled to qualified immunity.

Of course, it is more than well-settled that local governments do not enjoy such immunity. ***Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit***, 507 U.S. 163, 166 (1993). Along this line, we question Mrs. Langford's reading of the basis for the district court's ruling. In its immunity motion, the County contended, *inter alia*: "The Plaintiff has failed to state a claim upon which relief can be granted". It is true the district court stated the following: "Since the defendants in this instance are *Union County* and Union County employees, they *may* be entitled to qualified immunity under § 1983". (Emphasis added.) However, when the court ruled with respect to the County, it stated: "At the most, the county may have been guilty of negligence, which is not a basis for § 1983 liability". Therefore, it is not clear that the district court dismissed the federal claim against the County on the basis of qualified immunity.

In any event, complaints against local governments need not meet heightened pleading standards. ***Id.*** at 168. Instead, as stated

in FED. R. CIV. P. 8(a)(2), plaintiffs need only present "a short and plain statement of the claims showing that the pleader is entitled to relief". *Id.*

In order, through § 1983, to state a claim under federal law against the County, plaintiff must allege: (1) a constitutional or federal right was violated; (2) the deprivation was committed by a person acting under color of state law; and (3) "an official policy or custom" of the County "was a cause in fact" of the violation. **Leffall v. Dallas Indep. Sch. Dist**., 28 F.3d 521, 525 (5th Cir. 1994) (quoting **Monell v. Dep't of Social Servs. of the City of New York**, 436 U.S. 658, 690-91 (1978)). Similarly, a claim is stated in failure-to-train cases when a constitutional violation is a highly predictable consequence of that failure. *E.g.,* **Bd. of County Comm'rs of Bryan County, Oklahoma v. Brown**, 520 U.S. 397, 409 (1997). Of course, a local government cannot be held liable through *respondeat superior* for claims brought under § 1983. **Monell**, 436 U.S. at 689.

With regard to an "official policy" being a "cause in fact", it suffices for plaintiff to allege a failure to adopt a policy "if the *need to take some action* to control the agents of the local governmental entity 'is so obvious and the inadequacy [of existing practice] so likely to result in the violation of constitutional rights, that the policymak[er] ... can be reasonably said to have been indifferent to the need'". **Burge v. Parish of St. Tammany**,

13

187 F.3d 452, 471 (5th Cir. 1999) (emphasis added) (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 390 (1989)).

Concerning a failure to train, *City of Canton* held: "Consequently, while claims ... alleging that the [local government's] failure to provide training to ... employees resulted in the constitutional deprivation [plaintiff] suffered ... are cognizable under § 1983, they can only yield liability against a [local government] where [its] failure to train reflects deliberate indifference to the constitutional rights of its inhabitants". 489 U.S. at 392. "Only where a failure to train reflects a 'deliberate' or 'conscious' choice by a [local government] — a 'policy' as defined by our prior cases — can [it] be liable for such a failure under § 1983." *Id.* at 389.

*In her complaint*, Mrs. Langford alleged:

> Michael Langford died ... *as a direct result* of the failure of Union County to have *sufficient policies and training* concerning care of persons in the custody of Union County, ... the deliberate indifference of Union County and its employees for the safety of ... Langford, and the negligence of Union County and its employees.

(Emphasis added.) She also alleged: "Union County, Mississippi, through its Sheriff and Board of Supervisors, did not have in effect adequate policies regarding the care of persons committed to its care while awaiting transfer to the State mental health hospital"; and, similarly, the County "did not have in effect adequate policies regarding training of its employees as to the

14

care of persons committed to its care while awaiting [such] transfer".

*Johnson v. Dallas Indep. Sch. Dist*., 38 F.3d 198, 199 (5th Cir. 1994)(emphasis added), *cert. denied,* 514 U.S. 1017 (1995), held dismissal of a § 1983 claim against a school district was proper because "plaintiff *had not pled that [the district's] actions, custom, or policy caused [a student's] death*". Therefore, the school district could not be held liable for a constitutional violation. *Id.* *Johnson* distinguished the requirements for stating a claim against a local government (pleading) from the requirements for stating one against an official in his individual capacity (pleading *facts* sufficient to overcome qualified immunity). *Id.* S*ee also* *Oliver v. Scott*, 276 F.3d 736, 741 (5th Cir. 2002) (contrasting requirements for asserting claims against officials in their *official,* versus their *individual,* capacity).

In sum, Mrs. Langford's federal law claim against the County is sufficient to withstand a Rule 12(b)(6) motion. Therefore, the dismissal of the claim pursuant to that Rule was in error.

B.

The district court held the County was entitled to absolute immunity from state tort claims for failure to enact sufficient policies or training concerning the care of persons in its custody. *See* MISS. CODE ANN. § 11-46-9(e) ("A governmental entity and its employees acting within the course and scope of their employment or

15

duties shall not be liable for any claim ... arising out of an injury caused by adopting or failing to adopt a statute, ordinance or regulation.").

Plaintiff did more, however, than allege Union County failed to enact policies. She also claimed negligence on the part of its employees: "Union County, through its employees, also acted with gross negligence and reckless disregard ..."; and "[a]s a direct and proximate result of said negligence ... Langford died...."

Under Mississippi law, a governmental entity is *not* immune if its employees failed to use *ordinary care* in performing their duties. ***L.W. v. McComb Separate Mun. Sch. Dist.***, 754 So. 2d 1136, 1141-42 (Miss. 1999) (citing MISS. CODE ANN. § 11-46-9(1)(b)).

Therefore, the Rule 12(b)(6) dismissal was in error for the state law claims against Union County.

### III.

For the foregoing reasons, the judgment is **AFFIRMED** for the federal law claims against Bryant and Thompson, in their individual capacity; **VACATED** for the federal and state law claims against Union County; and **REMANDED** for further proceedings consistent with this opinion.

*AFFIRMED IN PART; VACATED IN PART; AND REMANDED*