**ESTATE OF Shane G. SORRELLS, et al., Plaintiffs,**

v.

**CITY OF DALLAS, et al., Defendants.**

**No. 3–99–CV–1185–P.**

United States District Court, N.D. Texas, Dallas Division.

Feb. 25, 2000.

---

104. Doc. # 29.

105. *See supra* note 26.

106. Doc. # 15.

107. Doc. # 19.

109. Doc. # 29.

110. *See supra* note 26.

111. Doc. # 34.

112. Doc. # 33.

Steve Sumner, Sumner, Schick & Scroggins, L.L.P., Dallas, TX, Rebecca E. Hamilton, White Hamilton, P.C., Rockwall, TX, Murray L. Bristol, Law Offices of Murray L. Bristol, Dallas, TX, Bryan F. Gill, Jr., Bryan

F. Gill, Jr., Attorney at Law, Lake Charles, LA, for plaintiffs.

Mark E. Goldstucker, Assistant City Attorney, Detra G. Hill, Assistant City Attorney, Dallas, TX, for defendants.

## MEMORANDUM OPINION AND ORDER

KAPLAN, United States Magistrate Judge.

Plaintiffs have filed a motion to lift the discovery stay previously entered in this cause. For the reasons stated herein, the motion is granted in part and denied in part.

### I.

On September 17, 1998, Dallas Police Officers Joseph A. Cutrona and William R. Readdy were dispatched to an apartment complex at 3910 North Hall Street to investigate a report of indecent exposure. (Plf. Complaint ¶¶ 3.01–3.03; Def.App. at 8, 15). Upon their arrival, the officers witnessed a nude male masturbating in the front seat of his car. (Plf. Complaint ¶ 3.03; Def.App. at 9, 16). The suspect had isolated himself in the vehicle by locking the doors and rolling up the windows. (Plf. Complaint ¶ 3.05; Def.App. at 9, 16). When the officers told the suspect to get out of his car, he failed to respond to their command and continued masturbating. (Plf. Complaint ¶ 3.06; Def.App. at 9, 16). The officers then called for backup. (Def.App. at 9, 16).

Plaintiffs allege that the officers should have realized that the suspect was "under the influence of drugs or otherwise mentally disturbed." (Plf. Complaint ¶¶ 3.07, 3.16.). He did not exhibit any violent behavior or attempt to flee the scene. (Id. ¶ 3.06–3.07, 3.17). Nevertheless, the officers decided to use Oleoresin Capsicum ("OC") spray to force the suspect out of his car. (Id. ¶ 3.09; Def.App. at 10, 16).[1] Plaintiffs maintain that the officers emptied an entire canister of OC spray through the car's air conditioning vents and sunroof. (Plf. Complaint ¶ 3.15). Officers Cutrona and Readdy admit that they shot pepper spray through the air conditioning vents, but do not mention the quantity used. (Def.App. at 10, 16). In any event, the suspect continued to masturbate and remained in his car. (Plf. Complaint ¶ 3.17; Def.App. at 10, 16).

Around this time, Sergeant Stanley W. Griffis arrived at the location. (Plf. Complaint ¶ 3.14; Def.App. at 2, 10, 16). Sergeant Griffis borrowed an ASP baton from Officer Readdy and broke out the passenger-side window of the car. (Plf. Complaint ¶ 3.21; Def.App. at 3, 10, 16). The suspect was injured by pieces of flying glass and began to bleed profusely. (Plf. Complaint ¶ 3.22; Def.App. at 3). Officer Cutrona and Sergeant Griffis then used OC spray on the suspect, but he still refused to exit the vehicle. (Plf. Complaint ¶ 3.22; Def.App. at 3, 10, 16). At that point, Officer Cutrona unlocked the car and attempted to pull the suspect from the vehicle. However, the suspect was sweating so heavily and was so slippery that the officer could not get a firm grasp on his wrist. (Def.App. at 11, 16). Officers Cutrona and Readdy were eventually able to remove the suspect from the car and get him to the ground. (Id.).

Shortly thereafter, three more officers arrived on the scene—Richard N. Hunt, Thomas W. Moore, and Arnaldo I. Rivera. (Plf. Complaint ¶ 3.27; Def.App. at 5, 12, 17–18, 20–21, 23, 27–28). A struggle ensued when the officers attempted to handcuff the suspect. (Id. ¶ 3.26; Def.App. at 5–6, 11, 17). According to plaintiffs, one of the officers struck the suspect "between 25 and 30 times" with a baton while another officer applied a chokehold. (Plf. Complaint ¶ 3.28). Officer Cutrona admits that he struck the suspect twice on the right arm with a baton after he refused a verbal command to put his arm behind his back. (Def.App. at 11). However, the suspect remained combative and tried to escape. (Plf. Complaint ¶ 3.34; Def.App. at 5, 11, 17). At one point he turned around and spit in Officer Cutrona's face. (Def.App. at 11, 17). Officer Readdy apprehended the suspect after a brief chase and brought him to the ground by using a Vascular Neck Restraint chokehold. (Id. at 12, 17). Offi-

---

1. Oleoresin Capsicum Spray, also known as pepper spray or pepper mace, is a chemical agent made from hot pepper extracts. The active ingredient, capsicum, is an inflammatory agent. Exposure to OC Spray irritates the mucous membranes of the eyes, nose, throat, and lungs. It also causes dilation of the capillaries, which inhibits the ability to breathe.

cers Cutrona, Hunt, and Moore then handcuffed the suspect. (*Id.* at 6, 12, 17, 21, 25).

Plaintiffs allege that the officers beat the suspect with their batons, kicked him "repeatedly and viciously," and maintained a chokehold "for five to eight minutes after he collapsed to the ground." (Plf. Complaint ¶¶ 3.36). The officers dispute many of these allegations and contend that the level of force used against the suspect was necessary to subdue him. According to the officers, the suspect continued to struggle after he was placed in handcuffs. (Def.App. at 12, 17, 21, 25). Officer Cutrona tried to protect himself by striking the suspect several times on the leg with his baton. (*Id.* at 12, 17). He then placed his right foot on the suspect's shoulder to prevent him from standing-up. (*Id.* at 12–13). The other officers held the suspect down by his arms and legs. (*Id.* at 6, 13, 21, 25, 28).

At some point during this ordeal, the suspect lost consciousness and stopped breathing. (Plf. Complaint ¶¶ 3.39–3.41; Def.App. at 7, 13, 18, 21, 25, 28). Paramedics administered CPR at the scene and transported the suspect to Parkland Memorial Hospital. (Plf. Complaint ¶ 3.42; Def.App. at 13–14). Despite efforts to revive him, he was pronounced dead on arrival. (Plf. Complaint ¶ 3.43). An autopsy revealed that the suspect, later identified as Shane G. Sorrells, suffered a crushed larynx. The coroner ruled his death a homicide. (*Id.* ¶ 3.44).

The statutory heirs of the deceased have now sued various police officers, supervisory officials, and the City of Dallas for civil rights violations under 42 U.S.C. § 1983.[2] The individual defendants raised the affirmative defense of qualified immunity in their original answer. (Def. Answer at 12). At defendants' request, the Court stayed all discovery until the issue of qualified immunity was resolved. *See* INITIAL SCHEDULING ORDER, 7/20/99 ¶ 2. However, plaintiffs were granted leave to conduct limited discovery on this issue after defendants filed a motion for summary judgment. *Id.*

---

2. Plaintiffs also assert a variety of state law claims against the defendants. However, these claims are not germane to the instant motion.

3. Plaintiffs originally filed a motion to lift the discovery stay on November 2, 1999. However,

Defendants filed their summary judgment motion on September 29, 1999. The motion alleges, *inter alia,* that: (1) the amount of force used against Sorrells does not rise to the level of a constitutional violation; and (2) the officers' conduct was objectively reasonable under the circumstances. In support of their motion, defendants rely on the affidavits of six police officers who were present at the scene—Stanley W. Griffis, Joseph A. Cutrona, William R. Readdy, Thomas W. Moore, Richard N. Hunt, and Arnaldo I. Rivera. Each officer recounts his version of the incident in question and concludes that his conduct "did not violate clearly established law of which a reasonable person would have known." (Def.App. at 7, 14, 19, 22, 26, 29).

Plaintiffs were not required to respond to the summary judgment motion. Instead, they were invited to file a motion for leave to conduct discovery in accordance with the court's prior order. Plaintiffs were instructed to file a motion specifying: (1) the interrogatories they wanted to send to defendants; (2) the documents or categories of documents they wanted to obtain from defendants; (3) the specific witnesses they wanted to depose and the subject matter of each deposition; and (4) an explanation of why this discovery was necessary to enable plaintiffs to respond to the issues raised in the summary judgment motion. *See* ORDER, 10/1/99.

Plaintiffs filed a motion to lift the discovery stay on November 12, 1999.[3] They contend that the following discovery is necessary to resolve the issue of qualified immunity:

1. One set of 13 interrogatories directed to the City of Dallas;

2. One set of 28 document requests directed to the City of Dallas; and

3. The depositions of the six police officers and Fire Chief Roland Gamez, Fire Chief Joseph Vasquez, Randy W. Knight, Daniel W. Carter, Sergeant

---

they failed to comply with the court-ordered guidelines and their motion was denied without prejudice. *See* ORDER, 11/3/99.

Joe A, DeCorte, Detective James E. Gallagher, and Dr. J.M. Guileyardo. Defendants oppose *any* discovery at this stage of the proceeding because plaintiffs have failed to plead sufficient facts to overcome their qualified immunity defense. Alternatively, defendants maintain that the discovery requested by plaintiffs is not "narrowly tailored" to the issue of qualified immunity. Both sides have briefed the issues and this matter is ripe for determination.

## II.

This case is a prime example of a troubling trend in civil rights cases. Time after time, individual defendants seek a stay of all discovery until the issue of qualified immunity is resolved. Yet these defendants do not seek a ruling on their immunity defense until they move for summary judgment. Invariably, the summary judgment motion is not limited to the issue of qualified immunity but covers the underlying substantive claims as well. Such maneuvering perverts the purposes of the discovery stay, creates inefficiency and confusion in the resolution of qualified immunity cases, and unfairly blind-sides plaintiffs by forcing them to respond to evidence before they have an opportunity to conduct discovery. The Court intends to end this practice today.

## A.

■■■ Government officials are entitled to qualified immunity if their conduct does not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *see also Anderson v. Creighton*, 483 U.S. 635, 639–40, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). The qualified immunity defense was intended to balance the need to stem abuses of office with the expense of litigation, the diversion of official energy from pressing public issues, and deterrence from government service. *Harlow*, 102 S.Ct. at 2736. *See also Scheuer v. Rhodes*, 416 U.S. 232, 247, 94 S.Ct. 1683, 1691–92, 40 L.Ed.2d 90 (1974). It protects these competing interests while allowing trial courts to resolve "insubstantial claims" before discovery and trial. *Harlow*, 102 S.Ct. at 2738. *See also Elliott v. Perez*, 751 F.2d

1472, 1478 (5th Cir.1985) (*Harlow* was "born out of the experience-based recognition" that officials are entitled to be free from "overwhelming preliminaries of modern litigation" until the right to immunity is considered). To this end, the Supreme Court has developed a two-step process for addressing a claim of qualified immunity. *Siegert v. Gilley*, 500 U.S. 226, 232, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991). First, the court must determine whether the plaintiff has alleged the deprivation of an actual constitutional right. *Wilson v. Layne*, 526 U.S. 603, 609–11, 119 S.Ct. 1692, 1697, 143 L.Ed.2d 818 (1999); *Siegert*, 111 S.Ct. at 1793. "Decision of this purely legal question permits courts expeditiously to weed out suits which fail the test without requiring a defendant who rightly claims qualified immunity to engage in expensive and time consuming preparation to defend the suit on its merits." *Siegert*, 111 S.Ct. at 1793. *See also Samaad v. City of Dallas*, 940 F.2d 925, 940 (5th Cir.1991). If the plaintiff alleges the deprivation of a constitutional right, the court must then decide whether that right was clearly established at the time of the alleged violation. *Wilson*, 119 S.Ct. at 1697; *Siegert*, 111 S.Ct. at 1793–94. A constitutional right is clearly established if "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson*, 107 S.Ct. at 3039. The second prong of this inquiry necessarily depends on the unique circumstances of each case. *Id.*, 107 S.Ct. at 3039–40. However, the subjective intent of the defendant-official is irrelevant. *Id.* at 3040.

## B.

■■■ Qualified immunity is not merely a defense to liability but an immunity from suit. *Swint v. Chambers County Comm'n*, 514 U.S. 35, 42, 115 S.Ct. 1203, 1208, 131 L.Ed.2d 60 (1995); *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985). For this reason, the Supreme Court has repeatedly admonished courts to decide the issue of qualified immunity "at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227, 112 S.Ct. 534, 536, 116 L.Ed.2d 589 (1991);

*Anderson,* 107 S.Ct. at 3042 n. 6; *Mitchell,* 105 S.Ct. at 2815; *Harlow,* 102 S.Ct. at 2738.

Courts have long struggled with the best method of achieving this goal. The Fifth Circuit originally imposed a "heightened pleading" requirement in civil rights cases. Ordinarily, a complaint is sufficient so long as it provides a "short and plain statement" of the claim showing that the plaintiff is entitled to relief. *See* FED.R.CIV.P. 8(a); *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957). However, the Fifth Circuit required civil rights plaintiffs to go beyond such notice pleading and "state with factual detail and particularity the basis for the claim which necessarily includes why the defendant-official cannot successfully maintain the defense of immunity." *Elliott,* 751 F.2d at 1473. The court reasoned that a lesser standard "effectively eviscerates" the protections of qualified immunity. *Id.* at 1476.[4]

The court revisited this "heightened pleading" requirement in *Schultea v. Wood,* 47 F.3d 1427 (5th Cir.1995) (en banc). Although a plaintiff must still "engage the affirmative defense of qualified immunity when invoked," he no longer is required to anticipate the defense in his complaint at the risk of dismissal under Rule 12. *Id.* at 1430. Instead, the district court may order the plaintiff to file a Rule 7(a) reply after the defendant raises the issue of qualified immunity in his answer. *Id.* at 1433–34. Such a reply "must be tailored to the assertion of qualified immunity and fairly engage its allegations." *Id.* at 1433. *See also Crawford–El v. Britton,* 523 U.S. 574, 597–98, 118 S.Ct. 1584, 1596–97, 140 L.Ed.2d 759 (1998) (approving use of Rule 7(a) reply in cases requiring proof of wrongful motive to prevent unnecessary or burdensome discovery on government officials). The Fifth Circuit has indicated that this "is the preferred procedure preceding consideration of a motion to dismiss on grounds of qualified immunity." *Todd v. Hawk,* 72 F.3d 443, 446 (5th Cir. 1995).

### C.

■ One of the purposes of qualified immunity is to protect public officials from "broad-ranging discovery that can be peculiarly disruptive of effective government." *Anderson,* 107 S.Ct. at 3042 n. 6, *quoting Harlow,* 102 S.Ct. at 2737–38. However, not all discovery is prohibited. A district court may allow limited discovery if it determines that the plaintiff has alleged facts which, if proved, would overcome the defense of qualified immunity. *Mitchell,* 105 S.Ct. at 2815 ("Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery."). *See also Wicks v. Mississippi State Employment Services,* 41 F.3d 991, 994 (5th Cir.), *cert. denied,* 515 U.S. 1131, 115 S.Ct. 2555, 132 L.Ed.2d 809 (1995); *Jacquez v. Procunier,* 801 F.2d 789, 791 (5th Cir. 1986). Such discovery must be "narrowly tailored to uncover only those facts needed to rule on the immunity claim." *Wicks,* 41 F.3d at 994, *quoting Lion Boulos v. Wilson,* 834 F.2d 504, 507 (5th Cir.1987).

### III.

■ Several principles emerge from these cases. First, a defendant must affirmatively plead the defense of qualified immunity in his answer. *Siegert,* 111 S.Ct. at 1793. Second, the plaintiff must be given an opportunity to file a Rule 7(a) reply if "greater detail might assist" in the resolution of this issue. *Schultea,* 47 F.3d at 1434. Third, the defendant should promptly move for dismissal under Rule 12(b)(6) if the complaint and Rule 7(a) reply fail to allege sufficient facts to overcome the immunity defense. The timing and sequence of these procedures enables the Court to decide the threshold question of qualified immunity "at the earliest possible stage in litigation." *Hunter,* 112 S.Ct. at 536; *Anderson,* 107 S.Ct. at 3042 n. 6. Only if more time is needed to develop the facts through discovery or otherwise should a defendant wait until the summary judgment

---

**4.** The Supreme Court rejected this "heightened pleading" requirement in civil rights cases brought against municipalities. *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* 507 U.S. 163, 164, 113 S.Ct. 1160, 1161, 122 L.Ed.2d 517 (1993). However, it explicitly reserved the question whether such a requirement may be imposed in cases against individual public officials. *Id.,* 113 S.Ct. at 1162.

stage to seek dismissal on the grounds of immunity.

The course of this litigation reveals how far we have come from the proper procedural focus in a qualified immunity case. Defendants never asked plaintiffs to file a Rule 7(a) reply. Nor did they move for dismissal under Rule 12(b)(6). Undoubtedly, this is because defendants realize that plaintiffs have alleged facts which, if proved, would overcome their immunity defense.[5] Defendants themselves recognize the importance of the underlying historical facts because their pending summary judgment motion is supported by the affidavits of six police officers who participated in the events giving rise to this suit. Yet they vigorously oppose plaintiffs' efforts to conduct any discovery until the issue of qualified immunity is decided.

The absurdity of this scenario should be plain. The only reason the question of qualified immunity is still unresolved is because defendants chose not to engage it as a threshold matter. Instead, defendants first raised the issue in a fact-intensive motion for summary judgment. They now hide behind the shield of qualified immunity to deny access to evidence solely within their control while using that same evidence against plaintiffs.[6] Limiting discovery in these circumstances is inherently unfair.[7] *See Castro v. United States,* 34 F.3d 106, 112 (2d Cir.1994) ("Where the claimant's description of the events suggests that the defendants' conduct was unreasonable, and the facts that the defendants claim are dispositive are solely within the knowledge of the defendants and their collaborators, summary judgment can rarely be granted without allowing the plaintiff an opportunity for discovery as to the questions bearing on the defendants' claims of immunity."); *Smith v. Luther,* 1996 WL 671630 at *2 (N.D.Miss. Aug. 16, 1996) ("In this court's view, it is inappropriate for [the] defendants to gain shelter from discovery under the qualified immunity shield while simultaneously attacking plaintiff with documentary evidence from which he cannot defend himself because of the discovery stay.").

 Moreover, the elements of plaintiffs' excessive force claim coincide in large part with the elements of defendants' qualified immunity defense. *See Heitschmidt v. City of Houston,* 161 F.3d 834, 839 (5th

---

**5.** The Court reaches the same conclusion after an independent review of the complaint. Plaintiffs allege that the defendants: (1) used an entire canister of pepper spray on Sorrells; (2) struck him repeatedly with their batons; (3) kicked him while he was on the ground; and (4) maintained a chokehold for 5 to 8 minutes after he collapsed. (Plf. Complaint ¶¶ 3.15, 3.28, 3.36). During most of this encounter, plaintiffs state that Sorrells did not pose a threat to defendants and made no attempt to escape. (*Id.* at ¶¶ 3.18, 3.25, 3.37). Plaintiffs further contend that defendants used an improper chokehold on Sorrells that crushed his larynx and resulted in his death. (*Id.* ¶ 3.37). These detailed factual allegations, if proved, give rise to a Fourth Amendment violation. *See, e.g. Tennessee v. Garner,* 471 U.S. 1, 11, 105 S.Ct. 1694, 1701, 85 L.Ed.2d 1 (1985) (use of deadly force not justified to prevent unarmed suspect from evading arrest).

 Moreover, defendants have not alleged any facts to support their qualified immunity defense. The Fifth Circuit has noted that "[a] defendant has an incentive to plead his defense with some particularity because it has the practical effect of requiring particularity in the reply." *Schultea,* 47 F.3d at 1433. Plaintiffs' complaint is more than sufficient in light of the conclusory allegations of qualified immunity.

**6.** The Court questions whether the individual defendants have waived their right to stay discovery under the guise of qualified immunity by seeking summary judgment, at least in part, based on their own affidavit testimony. Although research does not reveal any cases directly on point, courts have found waiver in other circumstances when a party uses a privilege or immunity as both a sword and a shield. *See United States v. Workman,* 138 F.3d 1261, 1263–64 (8th Cir.1998) (attorney-client privilege waived when defendant in criminal case asserts defense of reliance on advice of counsel); *Cox v. Administrator U.S. Steel & Carnegie,* 17 F.3d 1386, 1418–19, *as modified,* 30 F.3d 1347 (11th Cir.1994), *cert. denied,* 513 U.S. 1110, 115 S.Ct. 900, 130 L.Ed.2d 784 (1995) (litigant's assertion of belief that actions were lawful waives attorney-client privilege); *Chevron Corp. v. Pennzoil Co.,* 974 F.2d 1156, 1162–63 (9th Cir.1992) (same), *United States v. Bilzerian,* 926 F.2d 1285, 1292–93 (2d Cir.), *cert. denied,* 502 U.S. 813, 112 S.Ct. 63, 116 L.Ed.2d 39 (1991) (same); *Independent Productions Corp. v. Loew's, Inc.,* 22 F.R.D. 266, 276–78 (S.D.N.Y.1958) (filing antitrust action waived privilege against self-incrimination relating to subject matter of lawsuit). A similar argument can be made in this case. However, the Court need not decide this issue since plaintiffs do not claim waiver.

**7.** The Court notes that plaintiffs are particularly hamstrung in their ability to dispute this evidence because Shane Sorrells is dead.

Cir.1998). In order to establish an excessive force claim under the Fourth Amendment, a plaintiff must show that: (1) he suffered a significant injury; (2) resulting directly and only from the use of force that was clearly excessive to the need; and (3) the force used was objectively unreasonable. *See Johnson v. Morel,* 876 F.2d 477, 480 (5th Cir.1989). The Court must view the totality of circumstances from the standpoint of a reasonable officer on the scene, paying particular attention to "whether the suspect pose[d] an immediate threat to the safety of the officers or others." *Stroik v. Ponseti,* 35 F.3d 155, 158 (5th Cir.1994), *cert. denied,* 514 U.S. 1064, 115 S.Ct. 1692, 131 L.Ed.2d 556 (1995), *citing Graham v. Connor,* 490 U.S. 386, 397, 109 S.Ct. 1865, 1872, 104 L.Ed.2d 443 (1989). As previously stated, the relevant inquiry in a qualified immunity analysis is whether the defendant's actions were objectively unreasonable under the circumstances. *Anderson,* 107 S.Ct. at 3038–39. Given the overlap of these issues, it is virtually impossible to separate discovery on the merits from discovery on the qualified immunity defense. *See Cassanova v. Marullo,* 1995 WL 448005 at *2 (E.D.La. July 27, 1995).

 Finally, the Court notes that much of the discovery requested by plaintiffs is directed to the City of Dallas and goes to the issue of municipal liability. A municipality is not entitled to qualified immunity. *Owen v. City of Independence, Missouri,* 445 U.S. 622, 638, 100 S.Ct. 1398, 1409, 63 L.Ed.2d 673 (1980); *Lynch v. Cannatella,* 810 F.2d 1363, 1371–72 (5th Cir.1987). Therefore, plaintiffs should be allowed to conduct discovery in order to pursue their claims against this defendant. *See Beck v. Taylor County,* 1998 WL 682265 at *1 (N.D.Tex. Sept. 29 1998) (Fitzwater, J.); *Gauglitz v. City of Dallas,* 1997 WL 786246 at *2 n. 3 (N.D.Tex. Dec. 15, 1997) (Fish, J.). *See also Batiste v. Colonial Sugars, Inc.,* 1995 WL 491153 *1 (E.D.La.1995), *appeal dism'd,* 101 F.3d 701 (5th Cir.1996) (sheriff sued in official capacity not entitled to stay of

discovery or other protections of qualified immunity).[8]

## IV.

Most of the discovery requested by plaintiffs is either relevant to their claims against the City of Dallas or to the determination whether the force used against Sorrells was objectively reasonable under the circumstances. Such discovery includes:

1. *Investigative Materials.* Plaintiffs have requested information and documents pertaining to the investigation conducted by the Dallas Police Department of the incident made the basis of this suit. (Interrogatory Nos. 3, 5, 9 & 10; Request Nos. 1, 14, 21, 22, 23, 24, & 25). These investigative materials will shed light on the facts and circumstances surrounding the use of force against Shane Sorrells. It may also lead to the discovery of additional witnesses who may support or contradict the testimony of the police officers on the scene.

2. *Identity of Potential Witnesses.* Plaintiffs seek the identity of all persons who participated in the apprehension and arrest of Shané Sorrells, including officers and civilian employees who worked in "911 dispatch." (Interrogatory Nos. 4 & 12). Discovery of this information will enable plaintiffs to investigate the facts and circumstances surrounding the use of force by the individual defendants.

3. *Similar Claims and Lawsuits.* Plaintiffs have asked for a detailed list of all claims and lawsuits filed against the City or its various departments in the last 10 years alleging violations of policies, customs, or practices involving: (a) the arrest of mentally disturbed or impaired suspects; (b) the use of physical force before, during, and after an arrest; (c) use of force alternatives; (d) medical care provided to suspects after the use of OC spray and any form of neck restraint; (e) responding to "Code 1" or "officer in trouble" dispatches; (f) the control of anger, frustration, and stress manifested by police officers,

---

8. The individual defendants argue that discovery against the City would require their participation and thus circumvent the protections afforded under the qualified immunity doctrine. (Def. Response at 13). However, parties who may be entitled to qualified immunity are not necessarily exempt from discovery when called as a witness to claims against a non-immune defendant. *See Denton v. Twyford,* 142 F.R.D. 140, 143 (S.D.Ohio 1992); *Beck,* 1998 WL 682265 at *1.

firefighters, and EMS personnel in the performance of their duties; (g) the use of health care or hygiene-related gear during the arrest process; and (h) investigating the death of suspects while in custody. (Interrogatory No. 8). Although some of this discovery may be overly broad, it bears on the issue of municipal liability.

4. *Disciplinary Action.* Plaintiffs have requested the identity of all police officers, firefighters, and EMS personnel who have been disciplined as a result of their involvement in any similar claims or lawsuits filed against the City. (Interrogatory No. 11). Certainly, plaintiffs are entitled to know whether any of the named defendants or other City employees were disciplined as a result of the incident made the basis of this suit. Information pertaining to disciplinary action taken against employees in other cases is not reasonably calculated to lead to the discovery of admissible evidence and should not be allowed at this juncture.

5. *Depositions.* Plaintiffs want to depose a total of 13 witnesses in this case: Sergeant Stanley W. Griffis, Officer William R. Readdy, Officer Joseph A. Cutrona, Officer Thomas W. Moore, Officer Richard N. Hunt, Officer Arnaldo I. Rivera, Fire Chief Roland Gamez, Fire Chief Joseph Vazquez, Randy W. Knight, Daniel W. Carter, Sergeant Joe A. DeCorte, Detective James E. Gallagher, and Dr. J.M. Guileyardo. (Plf. Motion at 13–14). Plaintiffs should be allowed to depose the six police officers who provided affidavits in response to defendants' motion for summary judgment. In addition, plaintiffs may depose either Chief Gamez or Chief Vasquez on issues related to municipal liability. No other depositions may be taken at this stage

of the proceeding without a detailed showing of good cause.[9]

## CONCLUSION

Plaintiffs' motion to lift the stay of discovery is granted with respect to the following discovery requests:

1. Plaintiffs may propound written interrogatories to Defendant City of Dallas. The City is ordered to serve answers or objections to Interrogatory Nos. 1, 2, 3, 4, 5, 7, 8, 9, 10, 11, 12 & 13.[10]

2. Plaintiffs may propound document requests to Defendant City of Dallas. The City is ordered to serve a written response or objections to Request Nos. 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 20, 21, 22, 23, 24, 25, 26 & 27.[11]

3. Plaintiffs may depose the following witnesses in this case: Sergeant Stanley W. Griffis, Officer William R. Readdy, Officer Joseph A. Cutrona, Officer Thomas W. Moore, Officer Richard N. Hunt, Officer Arnaldo I. Rivera, and either Fire Chief Roland Gamez or Fire Chief Joseph Vazquez. The scope of these depositions shall be limited to the subject matter of the affidavits and documentary evidence submitted in support of defendants' motion for summary judgment, and any other factual matters relevant to the issues of municipal liability and qualified immunity.

Defendants shall serve answers or objections to written discovery by *March 10, 2000.* Depositions shall be completed no later than *April 10, 2000.* Any discovery disputes will be resolved in accordance with the procedures outlined in the Standing Order on

9. Plaintiffs have failed to explain why they need to depose Randy W. Knight and Daniel W. Carter in order to respond to defendants' motion for summary judgment. The mere fact that these individuals may be "material witnesses" is not sufficient. (Plf. Motion at 14). Moreover, the Court is not persuaded that Sergeant Joe A. DeCorte and Detective James E. Gallagher must be deposed because they "made statements to Plaintiffs about the circumstances of Mr. Sorrell's death and the officers' statements immediately after his death." (*Id.*). Presumably, plaintiffs can testify as to their conversations with DeCorte and Gallagher. Such testimony would not constitute hearsay under Rule 801(d)(2) of the Federal Rules of Evidence and could be used

for summary judgment purposes. Finally, plaintiffs want to depose Dr. J.M. Guileyardo because "[h]e has knowledge of whether Mr. Sorrells' larynx was crushed and the magnitude of his injuries." (*Id.*). However, defendants do not dispute these facts in their summary judgment motion.

10. Subject to their objections, defendants have agreed to answer Interrogatory Nos. 1, 2 & 7.

11. Subject to their objections, defendants have agreed to produce documents responsive to Request Nos. 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 15, 16, 17, 18, 20, 26 & 27.

Non–Dispositive Motions. *See* STANDING OR-DER, 6/22/99.

In all other respects, plaintiffs' motion is denied and the stay of discovery will remain in effect.

SO ORDERED.