**Stephen C. STEM, Plaintiff–Appellee,**

v.

**Ralph AHEARN and Chris Card, Defendants–Appellants.**

No. 89–2956.

United States Court of Appeals, Fifth Circuit.

Aug. 13, 1990.

**2**

Sue Berkel, Asst. Atty. Gen., Patrick J. Fenney, Jim Mattox, Atty. Gen., Tort Lit. Div., Austin, Tex., for defendants-appellants.

John K. Grubb, Grubb & Dicecco, Chari Harnett–Kiger, Houston, Tex., for plaintiff-appellee.

Before WISDOM, SMITH, and BARKSDALE, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

This civil rights action follows an acrimonious child-custody dispute, with one parent leveling charges of child molestation against her former husband. Child protective services workers investigated and concluded, despite medical evidence to the contrary, that the father had sexually abused his minor daughter. As a consequence of this investigation, the mother secured a temporary state court order certifying herself as the exclusive conservator of the child.

Enjoined by court-ordered visitation, the father was denied access to his daughter for over four months. He asserts constitutional claims against the child protective services workers, the investigating agency, and the county. Among other charges, the father maintains that his fundamental parental rights were terminated without due process of law and, independently, that the investigation of the alleged molestation was orchestrated negligently and impinged upon various constitutional guarantees.

The district court granted partial summary judgment in favor of the agency and county. The court declined to grant summary judgment in favor of the individual defendants, however, concluding that they are not immune from suit in either their individual or official capacities. This appeal follows that adverse immunity determination. Concluding that the child protective services workers enjoy immunity from liability, in both their official and personal capacities, we reverse.

I.

Stephen Stem agreed informally with his estranged wife, Lee Anne, to share custody of their two minor children pending a final decree of divorce. However, before a state court had the occasion to adjudicate custodial rights, the wife accused Stem, after the child's return from a weekend visit, of sexually abusing the minor daughter. Lee Anne did not confront her husband immediately about the child's well-being, electing instead to take her to the hospital for a physical examination. That examination evinced no medical evidence of molestation. The examining physician, however, dutifully notified the Harris County Children's Protective Services (HCCPS) of the alleged sexual abuse.

Ralph Ahearn is the child protective services employee charged with the investigation of this case. After interviewing the wife and child, Ahearn concluded that Stem had indeed molested his daughter, despite

the lack of medical corroboration. Ahearn, however, never interviewed Stem or notified him of his investigation. Stem first learned of HCCPS's investigation when the agency petitioned to secure a temporary state court order to confer exclusive possessory conservatorship of the child upon his wife.

Stem argues that the investigation of the charge of child molestation, raised by his estranged wife, was so grossly negligent that it served to terminate fundamental parental rights in contravention of the process minimally due under the Constitution. Specifically, he was never given notice of the investigation or given an opportunity to be heard on the sexual-abuse charges prior to his condemnation, before HCCPS, of being a molester. Presumably, an interview would have cured any suspicion harbored by HCCPS investigators.

Relying upon alleged breaches of the fifth, sixth, and fourteenth amendments, Stem seeks $7 million in actual and punitive damages under 42 U.S.C. § 1983 against Harris County and HCCPS and against Ahearn, and his supervisor, Chris Card, both of whom are sued in their official and private capacities. The Attorney General of Texas answered the civil complaint on behalf of all named defendants.

On motion for summary judgment, the district court agreed with the Attorney General that HCCPS is an organizational arm of the Texas Department of Human Services (TDHS) and that such a state agency enjoys eleventh amendment immunity. Further, Harris County, like all instruments of county government, cannot be held vicariously liable for the actions of state agencies, as essentially charged in the complaint.

However, the district court declined to grant summary judgment in favor of Ahearn or Card, reasoning that neither enjoys eleventh amendment or qualified immunity. This interlocutory appeal is thus limited to the immunity, if any, available to these child protective services workers, in their official and individual capacities.

## II.

### A.

■ We may entertain appeals, although seemingly interlocutory in nature, prosecuted by public officials who seek to challenge the district court's determination that they do not enjoy either absolute or qualified immunity from suit.[1] However, the district court's denial of a motion for summary judgment because of the perceived lack of qualified or absolute immunity constitutes an appealable "final judgment" only if, as here, the immunity defense turns upon an issue of law and not of fact.[2]

### B.

■ The eleventh amendment generally divests federal courts of jurisdiction to entertain citizen suits directed against states. *Port Authority Trans–Hudson Corp. v. Feeney*, —— U.S. ——, 110 S.Ct. 1868, 1872, 109 L.Ed.2d 264 (1990); *Edelman v. Jordan*, 415 U.S. 651, 662–63, 94 S.Ct. 1347, 1355–56, 39 L.Ed.2d 662 (1974). The amendment is not evaded by suing state employees in their official capacity, since such an indirect pleading device remains in essence a claim upon the state treasury. *See Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 101–02, 104 S.Ct. 900, 908–09, 79 L.Ed.2d 67 (1984); *Ford Motor Co. v. Department of Trea-*

---

1. *See Mitchell v. Forsyth*, 472 U.S. 511, 524–30, 105 S.Ct. 2806, 2814–18, 86 L.Ed.2d 411 (1985) (denial of qualified immunity is immediately appealable as a final order under 28 U.S.C. § 1291); *Nixon v. Fitzgerald*, 457 U.S. 731, 742–43, 102 S.Ct. 2690, 2697–98, 73 L.Ed.2d 349 (1982) (denial of absolute immunity immediately appealable); *Nieto v. San Perlita Ind. School Dist.*, 894 F.2d 174, 176–77 (5th Cir.1990) (court has jurisdiction under *Mitchell* to review the district court's denial of summary judgment predicated upon qualified immunity); *Loya v. Texas Dep't of Corrections*, 878 F.2d 860, 861 (5th Cir.1989) (per curiam) (denial of motion to dismiss on the ground of eleventh amendment immunity is a "final decision" appealable under 28 U.S.C. § 1291).

2. *See Thompson v. City of Starkville*, 901 F.2d 456, 459 (5th Cir.1990); *Brawner v. City of Richardson*, 855 F.2d 187, 190–91 (5th Cir.1988).

**4**

*sury,* 323 U.S. 459, 464, 65 S.Ct. 347, 350, 89 L.Ed. 389 (1945).

■ The state, of course, may voluntarily waive eleventh amendment protection, if unequivocally expressed, *Port Authority,* 110 S.Ct. at 1873, or Congress may forcibly pierce state sovereign immunity to the extent allowed, for example, by section 5 of the fourteenth amendment, *Will v. Michigan Dep't of State Police,* — U.S. —, 109 S.Ct. 2304, 2309, 105 L.Ed.2d 45 (1989). However, it remains a settled constitutional principle that the eleventh amendment divests the federal judiciary of jurisdiction to hear citizen suits designed, ultimately, to secure monetary recovery from nonconsenting states. It is irrelevant for purposes of eleventh amendment immunity that the action is framed against the state directly, or indirectly against subordinate agencies or officeholders operating in their official capacities.

Significantly, Texas has not consented to be sued in federal court by resident or nonresident citizens regarding its activities to protect the welfare of children, nor has state sovereign immunity been eviscerated by Congress with the passage of section 1983. The *Will* Court, in fact, held that states and state officials sued in their official capacity are not deemed "persons" subject to suit within the meaning of section 1983. *Id.* at 2309, 2311–12.

■ Thus, if Ahearn and Card are deemed Texas state employees, we lack subject matter jurisdiction to adjudicate claims fashioned against them in their official capacity. If, however, they are essentially Harris County employees, eleventh amendment immunity is not implicated, since political subdivisions, such as counties and municipalities, do not fall within the amendment's protection. *Lake Country Estates, Inc. v. Tahoe Regional Planning Agency,* 440 U.S. 391, 400–01, 99 S.Ct. 1171, 1176–77, 59 L.Ed.2d 401 (1979); *Jacintoport Corp. v. Greater Baton Rouge Port Comm'n,* 762 F.2d 435, 438 (5th Cir. 1985), *cert. denied,* 474 U.S. 1057, 106 S.Ct. 797, 88 L.Ed.2d 774 (1986). Not surprisingly, the child protective services workers claim to be employees of TDHS, undisput-

edly an organ of state government. *See* Tex.Hum.Res.Code Ann. chs. 11, 21 (Vernon 1990) (TDHS created by legislature). Predictably, Stem asserts that the defendants are strictly Harris County child protective services employees.

■ In determining whether an entity is an organ of state or county government for eleventh amendment immunity purposes, we examine the following nonexhaustive list of factors: (1) whether state law views the entity as an arm of the state; (2) the source of the entity's funding; (3) the degree of local autonomy retained; (4) whether the entity is concerned primarily with local, as opposed to statewide, problems; (5) whether the entity has authority to sue and be sued in its own name; and (6) whether the entity retains the right to hold and use property. *Clark v. Tarrant County,* 798 F.2d 736, 744–45 (5th Cir. 1986); *accord McDonald v. Board of Mississippi Levee Comm'rs,* 832 F.2d 901, 906 (5th Cir.1987). The *Clark* factors are not designed to be applied mathematically but, when viewed in combination, aid considerably in resolving the immunity enjoyed by both the entity and its employees.

■ With little difficulty, we conclude that Ahearn and Card are state, not county, child protective services employees. This conclusion is consistent with the view of Texas courts, which regard child protective services workers as instruments of state power and, thus, state employees for immunity purposes. *See, e.g., Russell v. Texas Dep't of Human Resources,* 746 S.W.2d 510, 513–14 (Tex.App.—Texarkana 1988, writ denied) (child protective services workers treated as state employees); *Austin v. Hale,* 711 S.W.2d 64, 66–67 (Tex.App. —Waco 1986, no writ) (same).

Functionally HCCPS, and thus Ahearn and Card, are governed by the TDHS commissioner, the administrator of a state agency. *See, e.g.,* Tex. Hum. Res.Code Ann. §§ 21.004, 21.005 (Vernon 1990). Further, the defendants were hired and trained by the state, and they remain, as Stem admits, subject to TDHS regulations.

They are paid exclusively by the state and can be terminated by it.

Ahearn and Card derive their authority to investigate cases of child abuse from Texas statutory law, which is designed to address an alarming state wide problem of maltreatment of children. *See* Tex. Fam. Code Ann. §§ 34.05, 34.052, 34.053 (Vernon Supp.1990) (authorizing TDHS to investigate reports of child abuse). Significantly, any civil judgment rendered against the workers, for injuries caused as a consequence of their official duties, necessarily would be satisfied by state funds. When viewed in combination, we conclude that the *Clark* factors weigh heavily in favor of state, not county, employment for the individual defendants here.

We recognize that Harris County provides HCCPS with physical facilities as well as limited funding and administrative support. Nevertheless, we are not persuaded that such limited support, coupled with the attachment of "Harris County" to HCCPS, carries particular significance for immunity purposes. Organizationally, HCCPS constitutes one of many geographically identifiable departments of TDHS. Accordingly, we grant summary judgment in favor of Ahearn and Card in their official capacities.

## C.

Where the power of government is abused by officeholders, and sovereign immunity stands in the way, monetary recovery from the responsible individuals serves as an important mechanism to vindicate constitutional guarantees. *See Butz v. Economou,* 438 U.S. 478, 506, 98 S.Ct. 2894, 2910, 57 L.Ed.2d 895 (1978). However, these same public officeholders are due a measure of protection from "insubstantial lawsuits" and the effects of ruinous litigation. *See id.* at 506–08, 98 S.Ct. at 2910–12. Qualified immunity thus serves as an accommodation to competing public policy interests, which are designed to secure both a government that is accountable and one that can function. *See Anderson v. Creighton,* 483 U.S. 635, 638, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987).

■ To hold the child protective services workers personally liable here, Stem must pierce the qualified immunity that they inherently enjoy by demonstrating that the workers breached "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). That is, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson,* 483 U.S. at 640, 107 S.Ct. at 3039. Further, the applicable law that binds the conduct of officeholders must be clearly established at the very moment that the allegedly actionable conduct was taken. *Harlow,* 457 U.S. at 818, 102 S.Ct. at 2738; *Anderson,* 483 U.S. at 639, 107 S.Ct. at 3038. For purposes of summary judgment, courts are not at liberty to view the applicable law with the advantage of hindsight. *See Harlow,* 457 U.S. at 818, 102 S.Ct. at 2738.

We have recently encountered a case factually similar to the instant dispute. In *Hodorowski v. Ray,* 844 F.2d 1210 (5th Cir.1988), aggrieved parents brought a section 1983 action against Texas child protective services workers who temporarily removed the plaintiffs' children from the family home without a court order. We held that child protective services workers are entitled to, minimally, qualified immunity to ensure that an effective child-abuse investigation system exists. *Id.* at 1216. We rejected the TDHS workers' claim of entitlement to absolute immunity, however, for fear of immunizing intentional violations of clearly established law. *See id.* at 1212–13.[3]

---

3. We noted in *Hodorowski* that other circuits confer absolute immunity upon social service workers concerned with the protection and welfare of children under the rationale that their actions are analogous to those of prosecutors, or because their actions qualify as witness testimo-

ny, both of which merit absolute immunity. *See, e.g., Gardner v. Parson,* 874 F.2d 131, 145–46 (3d Cir.1989); *Meyers v. Contra Costa County Dep't of Soc. Servs.,* 812 F.2d 1154, 1156–57 (9th Cir.), *cert. denied,* 484 U.S. 829, 108 S.Ct. 98, 98

To survive a motion for summary judgment against a likely defense of qualified immunity, "the plaintiff's complaint [must] state with factual detail and particularity the basis for the claim which necessarily includes why the defendant-official cannot successfully maintain the defense of immunity." *Elliott v. Perez*, 751 F.2d 1472, 1473 (5th Cir.1985). In this case, Stem makes various conclusory allegations to the effect that he was deprived of due process of law, equal protection under the law, the rights secured by the privileges and immunities clause of the fourteenth amendment, and, curiously, "life, liberty, and the pursuit of happiness."

The few relevant facts that Stem pleads do not implicate the constitutional guarantees at issue, and no plain violation of clearly established law, as the law existed pending this investigation, is identified. While Stem cites caselaw for the purpose of demonstrating the existence in our jurisprudence of certain fundamental parental rights, our precedent is not supportive of his bold propositions, such as the assertion that parents must be given notice by HCCPS before a child-abuse investigation can commence. In fact, the caselaw is overwhelmingly adverse to Stem's position, which gives us pause to consider whether this suit was initiated in good faith.

Stem, for example, heavily relies upon *Chalkboard, Inc. v. Brandt*, 879 F.2d 668 (9th Cir.1989), *superseded*, 902 F.2d 1375 (9th Cir.1990), for the proposition that the child protective services workers here violated a clearly established due process right. However, *Brandt* is completely inapposite, since that case concerns an Arizona agency's summary suspension of a day-care center's operating license, admittedly a vested property interest, without a prior agency hearing. It is well settled that private property interests cannot be forcibly removed by the state without threshold procedural safeguards. However, in this case, Stem's parental rights were not impinged until *after a state court hearing* and, thus, unlike the day-care cen-

ter, he received all the process constitutionally due.

■ Stem ignores the fact that his parental rights were impinged only after a judicial hearing at which he was fully heard. Ahearn and Card never physically removed Stem's child from him or otherwise altered his parental rights under the law, although Ahearn did testify in court concerning his investigatory conclusions and did advise the mother to keep the daughter away from the plaintiff. However, offering adverse judicial testimony at a child-custody hearing does not implicate due process concerns and, further, it constitutes witness testimony that is absolutely immune from section 1983 liability. *See Briscoe v. LaHue*, 460 U.S. 325, 342–47, 103 S.Ct. 1108, 1119–22, 75 L.Ed.2d 96 (1983) (police officer's judicial testimony absolutely immune from section 1983 liability).

■ Nor does due process require parents, as Stem asserts, to be informed of a pending TDHS investigation regarding child abuse or to be heard by TDHS investigators. The law of Texas is such that only a court, not TDHS, is empowered to adjudicate or terminate parental rights. Ahearn and Card are completely powerless to adjudicate Stem's parental rights and, thus, like police officers, do not need to abide by trial-like procedures incident to their fact-finding mission. Further, the sixth amendment does not, as Stem suggests, vest in him a right to confront his accusers before TDHS investigators, since governmental agencies that are engaged in purely fact-finding activities are not bound by sixth amendment confrontational restraints. *Hannah v. Larche*, 363 U.S. 420, 449, 80 S.Ct. 1502, 1518, 4 L.Ed.2d 1307 (1960) (investigating agencies not bound by trial-like procedures).

### III.

Finding the remaining arguments raised by Stem to be completely devoid of merit, we conclude as a matter of law that the individual defendants' official and qualified

L.Ed.2d 59 (1987); *Kurzawa v. Mueller,* 732 F.2d    1456, 1458 (6th Cir.1984).

immunity bars the continuation of this suit against them. Accordingly, we REVERSE and REMAND this matter for further proceedings consistent herewith, including the entry of summary judgment in favor of Ahearn and Card.