Wayne **EDWARDS,** Plaintiff,

v.

Jan **WILLIAMS, et al.,** Defendants.

No. 01–40–KSF.

United States District Court, E.D. Kentucky.

Oct. 31, 2001.

---

Robert L. Treadway, Jr., Lexington, KY, for Plaintiff.

Mark D. Hardy, G. Thomas Mercer, Cabinet for Human Resources Dept. of Law, Frankfort, KY, for Defendants.

## OPINION & ORDER

FORESTER, Chief Judge.

This matter is before the Court on the defendants' motion to dismiss [DE # 2].

## I. FACTUAL BACKGROUND

The plaintiff and his estranged wife, who are in the midst of divorce proceedings in Fayette County Circuit Court, are parents

of a minor child, Jasmine. During the course of the divorce proceedings, Mrs. Edith Edwards alleged that the plaintiff had improper sexual contact with Jasmine and reported her allegations to Kentucky's Cabinet for Families and Children (the "Cabinet"), which happened to be her employer.[1] The plaintiff asserts that these allegations are false and were made by Mrs. Edwards in an attempt to restrict his unsupervised visitation with Jasmine.

Apparently, allegations of this nature are normally investigated by employees of the regional office in which the allegations are made. However, because Mrs. Edwards was employed in the Cabinet's Fayette County office, defendant Jan Williams, the Service Region Administrator Associate for the Bluegrass–Fayette Service Region of the Cabinet, assigned the matter to defendant James Salyer, a Family Services Worker employed by the Cabinet in Morehead, Kentucky.[2] Defendant Ann Johnson, the Service Region Administrator Associate for the Gateway/Buffalo Trace Service Region, was Salyer's immediate supervisor, and Johnson and Salyer were both supervised by defendant Cassandra Adkins, the Service Region Administrator for that region.

On March 6, 2000, Salyer filed his report with the Cabinet, finding that the charges against the plaintiff had been substantiated. The plaintiff filed an administrative appeal on April 5, 2000, which is currently being held in abeyance pending the outcome of this action.

On January 24, 2001, the plaintiff filed this action against the defendants in their individual capacities only, seeking damages under 42 U.S.C. § 1983. He claims that Mrs. Edwards unduly influenced Jasmine to make various false and exaggerated reports, turning Jasmine against him to the extent that she now suffers from a psychological disorder known as Parental Alienation Syndrome ("PAS"). He alleges that Salyer's investigation of the allegations was superficial, slipshod, and so grossly negligent as to have no probative value. Specifically, he alleges that Salyer should have known that Jasmine suffered from PAS and had been severely coached by Mrs. Edwards and that he failed to investigate the history of the marital relationship, the history of Jasmine's relationship with her parents, failed to review the orders entered in the divorce proceeding, and failed to investigate Jasmine's social, intellectual, and family development. He further alleges that Salyer used a fundamentally flawed technique in questioning Jasmine, which was improper, leading, and prejudicial, and failed to videotape the interview. He also claims that Salyer had numerous improper contacts with Mrs. Edwards during the course of the investigation.

As to the remaining defendants, the plaintiff alleges that they all negligently failed to properly supervise Salyer and failed to require Salyer to utilize normal investigative procedures and techniques. He contends that all of the defendants' actions were motivated by malice caused by the fact that both the defendants and Mrs. Edwards were employees of the Cabinet.

In terms of his injuries, the plaintiff claims to have suffered a loss of employment and educational opportunities as a resident in the area of child psychiatry at the University of Kentucky, asserts he has been alienated from his daughter and is unable to have a normal parental relationship with her, his professional standing

---

**1.** Mrs. Edwards was employed in the Cabinet's Fayette County office.

**2.** The Cabinet's Morehead office is part of the Gateway/Buffalo Trace Region of the Cabinet.

and reputation have been harmed, his ability to work and seek future employment are severely impaired, and he has suffered severe emotional distress and embarrassment.

## II. MOTION TO DISMISS

The defendants raise several arguments in support of their motion to dismiss. First, they argue that the plaintiff has failed to plead sufficient specific facts to establish entitlement to relief under § 1983, instead stating broad and general legal conclusions. Because the plaintiff has not met the heightened pleading standard for § 1983 cases, the defendants do not know the constitutional or statutory grounds upon which the plaintiff's claims rest.

The defendants also argue that to the extent the plaintiff attempts to state a claim for violation of his substantive and procedural due process rights or equal protection rights, these must fail. Based upon the plaintiff's allegation that the defendants' activities were significant to a judicial determination regarding visitation with Jasmine, they claim they are entitled to absolute immunity for conduct "intimately associated with the judicial phase" of the divorce proceedings. The defendants also argue that they are entitled to qualified immunity, as the complaint does not plead any alleged conduct that violated clearly and particularly established federal statutory or constitutional rights of which they would have known. The defendants also argue that the plaintiff's claims, all of which are couched in terms of negligent conduct, are not redressable under § 1983, and that the plaintiff has failed to avail himself of administrative remedies available under state law.

In response, the plaintiff contends that his complaint was pled with sufficient specificity to survive dismissal. He also argues

that his constitutional rights under the Fourteenth Amendment of the United States Constitution have been violated and each of his categories of damages sets forth a protected property or liberty interest. The plaintiff's primary complaint is that he has been deprived from future employment opportunities because of the defendants' wrongful conduct. This conduct was violative of both his substantive and procedural due process rights.

The plaintiff also argues that the defendants are not entitled to prosecutorial immunity and the defense of qualified immunity does not require the Court to dismiss his action. He further argues that this action should not be dismissed for failure to exhaust administrative remedies, and the claims against the defendants other than Salyer are not founded upon *respondeat superior* liability, but are based on their own conduct.

## III. ANALYSIS

### A. *Standard of Review*

■■■ It is well established that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). "All factual allegations are deemed true and any ambiguities must be resolved in plaintiff's favor." *Persian Galleries, Inc. v. Transcontinental Ins. Co.*, 38 F.3d 253, 258 (6th Cir.1994). The plaintiff must assert more than bare legal conclusions. *In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir.1993). "In practice, 'a ... complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory.'" *Id.* (quoting *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434,

436 (6th Cir.1988)). In short, the issue when considering this motion to dismiss is not whether the plaintiff will ultimately prevail, but rather, whether he is entitled to offer evidence in support of his claims.

## B. *Absolute Immunity*

The defendants argue that they are entitled to absolute immunity based upon the plaintiff's argument that the defendants' investigation was significant to a judicial determination regarding the terms of his visitation with his daughter. The Sixth Circuit has addressed the issue of absolute immunity as it applies to social workers in *Achterhof v. Selvaggio*, 886 F.2d 826 (6th Cir.1989).

In *Achterhof*, parents filed a § 1983 action against a social worker and others stemming from their investigation of child abuse allegations. The social worker argued that he was entitled to absolute immunity. The Sixth Circuit, applying a functional approach, held that the application of absolute immunity hinged on the nature of the social worker's activities as prosecutorial or investigatory.

> In restricting absolute immunity to those functions intimately associated with the judicial process, courts have made use of the distinction between prosecutorial and judicial duties and duties which are administrative or investigatory....
>
> In accord with this approach, we have recognized that social workers who initiate judicial proceedings against those suspected of child abuse or neglect perform a prosecutorial duty, and so are entitled to absolute immunity.... We have not, however, decided what level of immunity applies to social workers who simply begin an investigation of alleged child abuse....
>
>         ....

> Despite the possibility that criminal prosecution might have resulted from [the defendant's] investigation, his decision to "open a case" was not entitled to absolute immunity. This decision was only investigatory or administrative in nature, not prosecutorial, judicial or otherwise intimately related to the judicial process. [The defendant] did not initiate any court action in the role of a prosecutor, nor did he sit as a judge in an adversary proceeding. His work was investigatory. Indeed it was investigatory work of the most ordinary kind since it was mandated by the statute. Under [Michigan statutory law], neither [the defendant] nor anyone else in the Department of Social Services could have refrained from investigating the matter once the officials at the Forest Hills Northern High School filed a report.... If, as the [plaintiffs] alleged, [the defendant] chose to continue his investigation after an initial investigation revealed no evidence of child abuse, then this action was also investigatory, not prosecutorial.

*Id.* at 830 (citations omitted).

Nothing in the record of the present case indicates that the defendants' investigation has ever led to criminal prosecution of the plaintiff. There was an administrative proceeding, but the defendants did not sit as the judge. All of the defendants' actions may have an impact on the pending divorce proceedings, as suggested by the plaintiff, but they are not "intimately associated with the judicial process," as is required for a finding that absolute immunity would apply. As in *Achterhof*, the defendants' investigatory work was also mandated by state statute. K.R.S. § 620.030. As a result of the above, the Court determines that the defendants in this case are not entitled to absolute immunity.

## C. *Qualified Immunity*

█ The defendants also argue that they are entitled to qualified immunity for their actions. Pursuant to *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), qualified immunity extends to "government officials performing discretionary functions . . . insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 818. The United States Supreme Court recently discussed the doctrine of qualified immunity in *Saucier v. Katz,* 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), enunciating the following principles and guidelines:

> Where the defendant seeks qualified immunity, a ruling on that issue should be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive. Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." The privilege is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." As a result, "we repeatedly have stressed the importance of resolving immunity questions at the earliest possible stage in litigation."

*Id.* at 2156 (citations omitted). The Court also directed lower courts to "consider, then, this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the [defendant's] conduct violated a constitutional right? This must be the initial inquiry." *Id.* (citation omitted).

Regarding whether plaintiffs asserting a § 1983 claim face a heightened pleading standard, the Sixth Circuit has held that:

> when a plaintiff pleads his claim in generalized "notice" form, and the defense

of qualified immunity is asserted through a motion to dismiss, the plaintiff is required to respond to that defense. If his original complaint is deficient in that regard, he must amend his complaint to include the specific, non-conclusory allegations of fact that will enable the district court to determine that those facts, if proved, will overcome the defense of qualified immunity. . . . It is in this sense that a heightened standard attached to plaintiff's pleading.

*Veney v. Hogan,* 70 F.3d 917, 922 (6th Cir.1995). The court stated further that

> when a qualified immunity challenge is made to the complaint, the plaintiff is entitled to the opportunity to come forward with additional facts or allegations that show not only the violation of his rights, but also that these rights were so clearly established when the acts were committed that any official in the defendant's position, measured objectively, would have clearly understood that he was under an affirmative duty to refrain from the conduct. If this pleading burden is not carried by plaintiff in either the original complaint or by a pleading in response to defendant's assertion of the qualified immunity defense, dismissal is proper.

*Id.* at 921 (citations omitted). The justification for this standard is that "[t]he promise of early exit from a lawsuit offered by qualified immunity is an empty promise if plaintiffs are routinely permitted to survive a motion to dismiss with mere 'notice' pleading." *Id.* at 922.

### 1. *Do the Facts Alleged Show the Defendants' Conduct Violated a Constitutional Right?*

On this initial inquiry, the defendants argue that the answer is no. First, the defendants' alleged conduct does not "shock the conscience" and, therefore, any

claim for a violation substantive due process fails. Second, the plaintiff has not pleaded any property or liberty interest that is protected by procedural due process. Third, the plaintiff has failed to state a claim under the equal protection clause. The plaintiff responds that he has stated a claim for substantive and procedural due process violations and that his complaint should not be dismissed.

■ In order to succeed on his substantive due process claim under the Fourteenth Amendment, the plaintiff must show that the defendants' conduct "shocks the conscience." *Howard v. Grinage,* 82 F.3d 1343, 1349 (6th Cir.1996); *Mertik v. Blalock,* 983 F.2d 1353, 1367–68 (6th Cir. 1993). Furthermore, negligent conduct generally cannot form the basis of a § 1983 violation, *Daniels v. Williams,* 474 U.S. 327, 330, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986), and even grossly negligent conduct is insufficient. *Lewellen v. Metropolitan Gov't of Nashville and Davidson County, Tenn.,* 34 F.3d 345, 351 (6th Cir. 1994). In order to state a claim, a plaintiff must show intentional conduct that is more egregious than gross negligence. *See Smith v. Lexington Fayette Urban County Gov't,* 884 F.Supp. 1086, 1094 (E.D.Ky. 1995).

■ In the present case, the plaintiff accuses Defendant Salyer of the following wrongful acts. Salyer should have known that Jasmine suffered from PAS, had been severely coached by Mrs. Edwards, and that the charges were not true. He failed to investigate the marital history, the relationship between Jasmine and her parents, and the record in the divorce proceedings. He also failed to investigate Jasmine's school records, her counseling records, and her social activities. He used an improper, leading, and prejudicial interview technique with Jasmine and failed to videotape the interview. He also had improper con-

tacts with Mrs. Edwards throughout the course of the investigation, including telephone calls and e-mails, permitting Mrs. Edwards the opportunity to improperly influence the investigation. As to the remaining defendants, the plaintiff alleges that they failed to properly supervise defendant Salyer.

The plaintiff further alleges that this conduct was motivated by the defendants' actual malice toward him, which malice was caused by the fact that Mrs. Edwards worked for the Cabinet and which caused the defendants to wrongfully and unlawfully accept her allegations without proper foundation.

Even the most liberal reading of the plaintiff's pleadings compels the conclusion that, at most, Salyer engaged in negligent behavior, which is not actionable under § 1983. The plaintiff has failed to plead any specific facts that, if proven, would rise to the level of a constitutional violation. He does not allege any type of relationship between any of the defendants and Mrs. Edwards other than the fact that they are co-workers. He does not allege that Salyer personally knew Mrs. Edwards. He does not allege why contact with Mrs. Edwards during the course of the investigation was improper, other than the "opportunity" for influence. He does not allege that these defendants deliberately fabricated evidence against him, only that *Mrs. Edwards*—who is not a party to this action—has done so. The lone fact that Mrs. Edwards and the defendants were co-workers does not establish malice, as suggested by the plaintiff.

■ Further, the defendants' actions, if true, do not "shock the conscience" of the Court. The plaintiff has alleged in conclusory fashion that the defendants engaged in deliberate indifference, gross negligence, and/or recklessness. Howev-

er, the plaintiff cannot prevail simply by alleging that the defendants acted with "deliberate indifference, gross negligence, and/or recklessness." Instead, he must allege *specific actions* that constituted deliberate indifference, gross negligence, and/or recklessness. The facts alleged by the plaintiff, however, do not support these conclusions. Again, the acts complained of simply do not rise to the level of a constitutional violation.[3]

■ Because there was no constitutional violation by Salyer, there can be no supervisory liability for the remaining defendants. Further, the plaintiff does not allege that the supervisory defendants encouraged the alleged misconduct or directly participated in it. *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir.1984) ("At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate."). As a result, the plaintiff's substantive due process claim against them also fails.

■ In order to succeed on his procedural due process claim, the plaintiff must show a protectable liberty interest and then must show that the defendants' conduct was grossly negligent, deliberately indifferent, or intentional. *Howard*, 82 F.3d at 1350. Even assuming the plaintiff has shown a protectable liberty interest,[4] he has failed to bring forth facts that, if true, would lead to the conclusion that the

defendants' conduct was grossly negligent, deliberately indifferent, or intentional.

■ Further, the plaintiff cannot show that he has been denied notice and the opportunity for a fair hearing. An administrative review is ongoing at this time, but has been stayed pending the resolution of this action. Upon resolution of that proceeding, either party may seek further review and, ultimately, judicial review. Given the availability of these state remedies, the plaintiff cannot prove any procedural due process violations. Because the plaintiff has failed to plead facts sufficient to establish a constitutional violation, the defendants are entitled to qualified immunity.

### 2. Was the Right Clearly Established?

■ Even assuming the plaintiff has shown the violation of a constitutional right, the Court would grant qualified immunity to the defendants because the plaintiff failed to show that these rights were so clearly established when the acts were committed that any officials in the defendants' positions, measured objectively, would have clearly understood that they were under an affirmative duty to refrain from the conduct.

Courts facing similar cases—abuse allegations against a father by his estranged wife in acrimonious child-custody disputes—have held that it was objectively reasonable for the defendants, in light of prior case law, to conclude that their alleg-

---

**3.** One court has specifically found that, contrary to the plaintiff's suggestion, "there is no constitutional due process right to have child witnesses in a child sexual abuse investigation interviewed in a particular manner, or to have the investigation carried out in a particular way." *Devereaux v. Abbey*, 263 F.3d 1070, 1075 (9th Cir.2001).

**4.** The plaintiff argues that the "real gravamen of [his] complaint is that he has been de-

prived, by his wrongful categorization as a sex offender, from future employment opportunities" and that the United States Supreme Court has recognized this as a protectable liberty interest. However, the case the plaintiff relies upon, *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), does not support this proposition.

edly flawed investigations were consistent with the plaintiffs' clearly established rights. *See Manzano v. South Dakota Dep't of Social Services,* 60 F.3d 505, 513 (8th Cir.1995) ("Although the record reveals an investigation which appears far from textbook perfect, the record of the investigation ... does not demonstrate conduct so outrageous that it offends the substantive component of the Due Process Clause."); *Doe v. State of Louisiana,* 2 F.3d 1412 (5th Cir.1993) (holding social workers entitled to qualified immunity because a parent's liberty interest in family integrity was not clearly established constitutional right at the time of the alleged violation); *Watterson v. Page,* 987 F.2d 1 (1st Cir.1993) (holding that lack of due care in a child abuse investigation did not rise to a constitutional violation); *Frazier v. Bailey,* 957 F.2d 920 (1st Cir.1992) (holding qualified immunity applies to defendants who substantiated abuse allegations despite physician's report of neglect by the mother and despite allegations that the case worker coached and programmed the victim to make false allegations against her father); *Stem v. Ahearn,* 908 F.2d 1 (5th Cir.1990) (holding qualified immunity applied to defendants who substantiated abuse allegations despite medical evidence to the contrary and without interviewing the father). Similarly, in this case, the plaintiff has failed to show that his constitutional rights were so clearly established that the defendants would have clearly understood they were under an affirmative duty to refrain from the alleged conduct. Therefore, the defendants would be entitled to qualified immunity.

## IV. CONCLUSION

In accordance with the foregoing, the Court, being otherwise fully and sufficiently advised, HEREBY ORDERS that

(1) the defendants' motion to dismiss [DE # 2] is GRANTED; and

(2) that judgment in favor of the defendants shall be entered simultaneously herewith.

### JUDGMENT

In accordance with the opinion and order entered contemporaneously herewith, the Court, being otherwise sufficiently and fully advised, HEREBY ORDERS that

(1) the defendants' motion to dismiss [DE # 2] is GRANTED;

(2) judgment is entered in favor of the defendants;

(3) the plaintiff's claims against the defendants are DISMISSED WITH PREJUDICE and plaintiff shall take nothing thereby;

(4) this matter is STRICKEN from the active docket of the Court; and

(5) this is a final and appealable judgment.