**Joseph MICHEL, Plaintiff**

v.

**James R. BEUTLER, etc., et al., Defendants.**

**Case No. 3:11CV1772.**

United States District Court, N.D. Ohio, Western Division.

July 3, 2012.

Michael A. Rumer, Victoria Maisch Rumer, Zachary D. Maisch, Rumer & Maisch, Robert Adam Grzybowski, Jr., Reese & Grzybowski, Lima, OH, for Plaintiff Joseph L. Michel.

Donald E. Theis, Theis Law Office, Justin D. Burnard, Allotta, Farley & Widman, Toledo, OH, for Defendant Terry Dockery.

## ORDER

JAMES G. CARR, Senior District Judge.

This is a § 1983 case in which the plaintiff, Joseph Michel, claims that defendants James Beutler, Putnam County, Ohio Sheriff and four Putnam County, Ohio, Deputy Sheriffs, Terry Dockery, Brian Siefker, Doug Engel, and George Moser, deprived the plaintiff of his civil rights to be free from unlawful seizure and prosecution. Pending is the defendants' motion for summary judgment (Doc. 22), which I grant in part and deny in part.

### Background

Putnam County Deputies Dockery, Siefker, Engel and Moser, are undercover officers assigned to the Multi–Area Narcotic Task Force ("MAN"). MAN is a joint multi-county, multi-city effort to apprehend and prosecute drug traffickers in the area.

On February 25, 2010, at 10:50 p.m., March 1, 2010, at 3:09 p.m., and March 4, 2010, at 3:10 p.m., the officers [1] conducted visual, video, and audio surveillance of heroin purchases by Kisseberth, in the parking lot of a McDonald's restaurant in Ottawa, Ohio. Kisseberth told the officers that the plaintiff was the seller and his supplier was Josh Mangas. The officers reported they identified the plaintiff as the seller by

---

1. Dockery conducted surveillance of all three transactions. Siefker assisted Dockery on February 25; Engel assisted Dockery on March 1; Moser assisted Dockery on March 4.

their observation of him and recognizing his voice on the audio recording.

The Putnam County grand jury indicted plaintiff and Mangas. A Sheriff's Deputy from Williams County executed a warrant for plaintiff's arrest on August 23, 2010. Plaintiff remained incarcerated until September 1, 2010, when he posted bond. When, as discussed below, serious questions arose about Kisseberth's veracity, the prosecutor dismissed all charges against both defendants.

While the prosecution was pending, Siefker and plaintiff encountered one another and had a conversation. Each disputes the other's version of the conversation. Siefker contends plaintiff made an inculpatory statement about being in the McDonald's parking lot. Plaintiff asserts Siefker apologized, stating the officers knew that plaintiff was not involved. Plaintiff maintains that after the prosecutor dismissed the charges Dockery also apologized to him.

The events leading to dismissal of the charges began when plaintiff's defense attorney obtained a copy of one (and perhaps all three) of the surveillance videos.[2] He agreed with the plaintiff that the plaintiff was not the person depicted in the video.

Thereafter, according to the deputies, the officers confronted Kisseberth, who admitted lying about Mangas's involvement. She persisted, and still, apparently, persists in her contention about the plaintiff's involvement in the heroin sales.

On learning about Kisseberth's mendacity, the prosecutor dismissed the charges.

Plaintiff thereafter brought this § 1983 suit, in which he asserts six causes of action: 1) false arrest/violation of right to be free from unreasonable seizure, based on false reports and ensuing prosecution when defendants knew plaintiff was not the perpetrator; 2) violation of civil rights by custom, practice, usage, etc.; 3) conspiracy to violate civil rights; 4) failure to intercede to prevent violation of civil rights; 5) failure to supervise; and 6) malicious prosecution in violation of constitutional rights.

Plaintiff has filed a voluntary nonsuit as to Putnam County and the Putnam County Board of Commissioners. For the reasons that follow, I grant summary judgment as to all other defendants except Dockery and Siefker.

## Discussion

The gravamen of plaintiffs' claims is that Dockery and Siefker's report, when they reported that plaintiff sold heroin on the three occasions to Kisseberth, was knowingly false or in reckless disregard of the truth. If the jury were to believe that the officers in fact believed that plaintiff was the seller (as they contend), or, at worst, had such belief negligently, they would have lacked the requisite intent for liability under § 1983. *See Fisher v. City of Memphis*, 234 F.3d 312, 317 (6th Cir.2000) (recognizing that stating a claim under § 1983 requires "more than just mere negligence"); *see also Edwards v. Williams*, 170 F.Supp.2d 727, 734 (E.D.Ky.2001) (holding that "even grossly negligent conduct is insufficient" to make out a § 1983 claim) (citing *Lewellen v. Metro. Gov't of Nashville and Davidson Cnty., Tenn.*, 34 F.3d 345, 351 (6th Cir.1994)).

Plaintiff has, however, presented evidence that he was not the seller, and, as well, a basis on which a jury might find

---

**2.** Plaintiff claims to have seen only one video. The prosecutor in state court and defendants' attorney here state that plaintiff's state court defense attorney received all three videos. Without drawing any conclusions about what happened and who is responsible, plaintiff's contention that he has seen only one video shall be accepted. This does seem, though, to be a dispute that is readily amenable to resolution.

that the deputies falsified their reports and thereafter unlawfully worked to cause plaintiff to be prosecuted and arrested. He has presented alibi affidavits for all three dates and times alleged in the indictment. As to two of those dates, he has presented affidavits of others who state they were with him uninterruptedly working on day-long construction projects elsewhere in Northwest Ohio.

In addition, the evidence shows that the plaintiff was known to the deputies before the first alleged sale. Were a jury to believe that that was so, then it could find that claims by the deputies to have recognized the plaintiff and his voice while the sales were occurring (or thereafter, on the video recording(s) and his voice on the audio) were deliberately false.

There is, finally, the dispute, described above, as to the content of the post-arrest conversations between the parties.

These are fundamental disputes of fact for a jury to decide.

I conclude that, were a jury to find the disputed facts in plaintiff's favor, it could find defendants liable under § 1983 for: 1) unlawful arrest under the Fourth Amendment; 2) conspiracy to violate plaintiff's constitutional rights; and 3) unlawful prosecution.

■ As to the claims against the other defendants, they are entitled to summary judgment. None participated in the investigation, arrest, or prosecution. Plaintiff has presented no evidence on which a jury could base a finding that any of them conspired with the deputies to violate the plaintiff's civil rights. There is likewise no evidence to support the claim that they did anything unconstitutional in furtherance of an official custom, practice, or usage, breached a duty to intercede, or failed in their supervisory obligations. There is no evidentiary meat on the barebones of the complaint's allegations against those de-

fendants, and they are entitled to summary judgment.

■ With regard to the claim of unlawful arrest, defendants argue that since the arresting officer acted pursuant to a facially valid warrant based on probable cause, they are immune from any action resulting from that arrest. This is incorrect. The Sixth Circuit has held that officers cannot "rely on a judicial determination of probable cause when that determination was premised on an officer's own material misrepresentations to the court." *Gregory v. City of Louisville*, 444 F.3d 725, 758 (6th Cir.2006) (citing *Yancey v. Carroll Cnty.*, 876 F.2d 1238, 1243 (6th Cir.1989)). Officers act "in an objectively unreasonable fashion" where a plaintiff can show "that the officers (1) stated a deliberate falsehood or showed reckless disregard for the truth and (2) that the allegedly false or omitted information was material to the finding of probable cause." *Id.* (citing *Hill v. McIntyre*, 884 F.2d 271, 275 (6th Cir. 1989)).

■ I do note that the arresting officer was a Deputy Sheriff from Williams County. He acted on a facially-valid warrant, based on a facially-valid indictment, which he did not have any part in bringing about. Arguably, not having effectuated the arrest, neither defendant deputy can be held directly liable for it. The record, however, indicates that defendant Dockery learned from plaintiff shortly before return of the indictment that plaintiff was about to leave town. After he disclosed that to other members of the MAN unit, another officer contacted Williams County about arresting the defendant. Depending on whether that officer acted at Dockery's request, Dockery's involvement in the arrest could be more direct than simply anticipating that it would occur once the indictment issued.

Plaintiff thus has a viable claim against Dockery and Siefker for a violation of his right under the Fourth Amendment to be free from unlawful seizure.

I also conclude that the evidence, viewed most favorably in plaintiff's favor, could support a liability finding against the deputies on the claim of conspiracy to violate plaintiff's constitutional rights. The Sixth Circuit described the elements of a § 1983 conspiracy claim in *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir.2003) (internal citations omitted):

> A civil conspiracy is an agreement between two or more persons to injure another by unlawful action. Express agreement among all the conspirators is not necessary to find the existence of a civil conspiracy. Each conspirator need not have known all of the details of the illegal plan or all of the participants involved. All that must be shown is that there was a single plan, that the alleged coconspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant. It is well settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983.[3]

■ Based on the facts in the record, a jury could find that the defendant deputies were aware the plaintiff was not involved, or had substantial reason to know he was not involved in the sales to Kisseberth. Even if the jury found the deputies were merely negligent in their belief when the sales occurred, it could find that, once Kisseberth's mendacity became known, their continued participation (either in person or through their prior reports) in the prosecution manifested continuing conspiratorial intent *via* their perpetuation of falsehoods. *See Spurlock v. Satterfield*, 167 F.3d 995, 1004–06 (6th Cir.1999) (recognizing that continued detention and prosecution without probable cause is actionable under § 1983 for violation of Fourth Amendment rights).

■ If the jury concluded that the reports alleging his involvement were knowingly false when made, or known to the deputies to be such when presented to the grand jury, it could find that submission of those reports constituted a violation of the plaintiffs' constitutional rights not to be prosecuted in the absence of probable cause.

> To succeed on a malicious-prosecution claim under § 1983 when the claim is premised on a violation of the Fourth Amendment, a plaintiff must prove the following: First, the plaintiff must show that a criminal prosecution was initiated against the plaintiff and that the defendant made, influenced, or participated in the decision to prosecute. Second, because a § 1983 claim is premised on the violation of a constitutional right, the plaintiff must show that there was a lack of probable cause for the criminal prosecution. Third, the plaintiff must show that, as a consequence of a legal proceeding, the plaintiff suffered a deprivation of liberty, as understood in our Fourth Amendment jurisprudence, apart from the initial seizure. Fourth, the criminal proceeding must have been resolved in the plaintiff's favor.

*Sykes v. Anderson*, 625 F.3d 294, 308–09 (6th Cir.2010) (internal citations and quotation marks omitted).

---

**3.** Defendants have not challenged the conspiracy count on the basis of the conclusory nature of its allegations. In light of the state of the evidence, as discussed *infra*, they are presently on notice of the gravamen of what a detailed recitation of that evidence would be in a properly plead complaint.

Plaintiff has proffered sufficient evidence to survive summary judgment on each of these elements. The jury could also find that the defendants, through their conspiratorial acts in preparing and submitting false evidence, conspired to cause the plaintiff's arrest in violation of the Fourth Amendment. Both issuance of a warrant following indictment and its execution are foreseeable consequences of presenting evidence to a grand jury.

I conclude, accordingly, that, were the jury to find in plaintiff's favor as to the disputed facts and draw reasonable inferences therefrom, it could find in his favor as to his claims of false arrest, conspiracy and wrongful prosecution.

That being so, I find the defendants' claim of qualified immunity to be without merit.

The Sixth Circuit enunciated the elements of qualified immunity in *Cherrington v. Skeeter,* 344 F.3d 631, 636 (6th Cir. 2003):

> The Supreme Court has instructed that a qualified immunity inquiry generally entails two discrete analytical steps. As a threshold matter, we must ask whether the record, viewed most favorably to the plaintiff, establishes that "the officer's conduct violated a constitutional right." *Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 2156, 150 L.Ed.2d 272 (2001); *see also Burchett v. Kiefer,* 310 F.3d 937, 942 (6th Cir.2002). "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Saucier,* 533 U.S. at 201, 121 S.Ct. at 2156. "On the other hand, if a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established." 533 U.S. at 201, 121 S.Ct. at 2156; *see also Burchett,* 310 F.3d at 942.

Despite the defendants' contentions about qualified immunity, the law is and has long been clearly established with regard to the constitutional violations which a jury could find the defendants perpetrated, namely:

- Presenting false evidence to establish probable cause, thereby effectuating an unlawful arrest. *Spurlock, supra,* 167 F.3d at 1005 (holding that an individual's right to be free from the knowing use of false testimony is clearly established); *Hinchman v. Moore,* 312 F.3d 198, 205–06 (6th Cir.2002) ("[f]alsifying facts to establish probable cause to arrest and prosecute an innocent person is of course patently unconstitutional").

- Malicious prosecution under the Fourth Amendment, *Spurlock, supra,* 167 F.3d at 1005 (holding that an individual's right to be free from malicious prosecution and continued detention without probable cause is clearly established);

- Conspiracy to violate civil rights, *Campbell v. Erie Twp.,* 133 F.Supp.2d 953, 958 (E.D.Mich.2001) (recognizing that "freedom from a governmental conspiracy to violate one's civil rights is a clearly established right") (citing *Windsor v. Tennessean,* 719 F.2d 155, 165 (6th Cir. 1983)).

The defendants, are therefore, if the jury finds them liable for any of the foregoing constitutional violations, not immune from the plaintiff's demand for damages.

## Conclusion

In light of the foregoing, it is hereby

ORDERED THAT defendants motion for summary judgment (Doc. 22) be, and the same hereby is denied as to defendants

Siefker and Dockery and granted as to all claims as to all other defendants.[4]

So ordered.

4. This order is not a proper subject of interlocutory appeal, in view of the fact that it is bottomed on clearly disputed material and dispositive facts. If, nonetheless, defendants file a notice of appeal, thereby causing a postponement of further proceedings, I recommend, in the event the Court of Appeals dismisses any such appeal as improperly premature, that it also impose, or authorize the imposition of appropriate sanctions.